ARAMINTA D. STEWART, *Appellant from decision of the Judge of Probate for Penobscot County.*

The married daughter of a testator, named in his will as the sole executrix thereof, may, with the consent of her husband, be appointed executrix, and take upon herself and execute such trust.

R. S., c. 64, § 17, is not applicable to such a case.

APPEAL from the decision of the Judge of Probate for this county.

The appellant is the only daughter and principal legatee in the will of Barnabas P. Merrick; the will was duly made and executed by the testator, and after his death, and after proper notice, the will was duly proved, approved and allowed by the Court of Probate; the appellant was in and by said will named and appointed by the testator to be sole executrix thereof; yet, because the appellant at the time of the execution of the will, and of its approval in the Probate Court, was a married woman, the Judge of Probate refused to confirm her appointment as executrix, to accept her bond and issue to her letters testamentary under the will, although her husband gave his consent thereto, and jointly with her executed such a bond as was required by law. And the appellant entered an appeal.

*D. D. Stewart,* for the appellant.

KENT, J.—The single question, presented by this appeal, is whether a married woman can take upon herself the duty and trust of an executrix to a will in which she is named for that office, she being married at the time of the execution of the will, and her husband consenting to her thus acting.

Independently of any statute, the general rule of the English law is that any person may be an executor if mentally capable of executing its duties.

It seems to be universally conceded, in all the text books and in all the authorities, that coverture, in itself, is no in-

capacity for the office of executor or administrator, and that a married woman may execute such trust with the consent of her husband. Redfield, in his recent work on wills, thus states the result of his examination on this point: — " It is clearly settled, in the English law, that a married woman may become executrix, but cannot act without consent of her husband. If appointed while married, her husband must act concurrently with her, and if she marries whilst she is executrix her husband thereby becomes co-executor with her. 2 Redf. on Wills, c. 2, § 6, page 60. See also 1 Jarman on Wills, 31; *Holman* v. *Perry*, 4 Met., 242; 1 Williams on Ex'rs., 369, 449, 190, 191; 2 Williams on Ex'rs., 1562; Toller on Ex'rs., 34.

But it is contended that, although this is the rule of the English common law, and was formerly the law of this country, it has been entirely changed or abrogated by our statutes, either directly or by necessary implication.

In the first place, it is said that by our statute, R. S., c. 64, § 5, it is required that "every executor shall give bond, with sureties," and that a married woman cannot thus bind herself, and therefore cannot be an executrix. To this, it is answered, that by the statute of 1866, c. 52, a married woman may now execute such bond, and bind herself. It is also replied, that by a well established principle, where words are used, in a statute which necessarily include a class, and require certain acts to be done, that such requirement supersedes any exception or restriction before existing, and gives the power to do the prescribed act. Thus, where an infant gives a bond in a case of bastardy, or a married woman recognizes to prosecute an appeal taken by her, it has been held that the obligation in each case was binding. It was said by the Court, in *McCall* v. *Parker*, 13 Met., 372, that the Justice was authorized to require the accused to give a bond with sureties, and that, from the language of the statute and the nature of the subject, there was no reason to doubt that it was intended to include minors. *Curtice* v. *Bethamly*, 8 Allen, 336, where a married

woman recognized. If the law allows a married woman to be an executrix, and then requires " every executor" to give a bond, it would seem to follow, as the law must necessarily allow the executor to act, and as this cannot be done until the bond is filed and approved, that in such a case, whatever restriction exists under the general law as to contracts by married women, it could not be applied in this case.

It is analagous to the right of a married woman who is a trustee or executrix to make a will touching property held by her in a fiduciary character, although by the old common law, as a general principle, a married woman could not make a will. Jarman on Wills, 31; *Holman* v. *Perry*, 4 Met., 492.

Besides, it would hardly be a fiction of the law to invoke, if necessary, the old fashioned idea and doctrine, that the husband and wife are but one person in law, and that therefore the bond might be given by the husband with or without his wife.

It is said in 1 Williams on Ex'rs., 369, that " a *feme covert* may be an administrator. But she cannot take administration without the consent of her husband, inasmuch as, among other things, he is required to enter into the administration bond, which she is incapable of doing. Yet, if it is shown that her husband is absent or otherwise incompetent, a stranger may join in the security in his stead." This clearly shows that it is no fatal objection against the appointment of a *feme covert*, that she could not give a bond binding her, and that her husband might enter into " the required bond."

The question returns, whether, under our law, a married woman can be appointed as an executor. The answer to this question would seem to depend upon the answer to another, viz.,— is it forbidden? We have seen that the right existed at common law. Has it been abrogated? It is provided by § 17, c. 64, R. S., that " when an unmarried woman, who is joint or sole executor or administrator, marries, her husband shall not exercise such trust in her right, but her

authority is thereby extinguished, and the other executor or administrator, if any, may proceed in discharging the trust, as if she was dead. If there is no other, administration with the will annexed, or otherwise, may be granted."

This section does not include the case under consideration by its terms. It is confined to the case of an "unmarried" woman, who was an executor when sole, and its object is to terminate that relation upon her marriage. It is, however, suggested that it indicates that the will of the Legislature is that no married woman shall hold that trust. If such was the intention, it seems a little singular that the Legislature did not say so in direct terms, as it did in relation to guardianship. "No married woman, during her coverture, shall be appointed guardian; and, if any female guardian is married, her authority as such shall cease, nor shall her husband be guardian in her right." R. S., c. 67, § 16.

There seems to have been a designed omission of the general language used in the last quoted section, in the Act now in question. It would not be our proper province to supply it, even if we could see no good reason for the distinction. It may be that the section in relation to guardians was intended to apply only to guardians appointed by the Court, and not to testamentary guardians. It may be also suggested, with some plausibility, at least, that the law makers intended to allow a testator to designate an already married female friend, in whom he had confidence, and whose husband he knew and had no objection to, to be the executor of his will, and that such a designation should stand good. But, where the female was unmarried at the time of the making of the will, or at the death of the testator, and she afterwards marries, a new relation, not known to the testator, arises, and a new party is introduced into the trust. The law says, that as it was a *feme sole* that was originally designated by the will, a *feme covert*, with her new baron, shall no longer act.

The history of the legislation on this subject may throw

some light on the question before us. The Legislature of Massachusetts, in 1783, passed an Act containing provisions similar to the one now existing in this State, except that it only provided for the case, where the unmarried female was a joint executor or administrator, and married,— when she was thus only one in the trust, her right to act ceased on her marriage, and the other executors or administrators proceeded to finish the duties of the trust. At the revision of the Massachusetts statutes, in 1836, the provision was extended to the case of sole executorship, and the law was then for the first time made to apply to such a case. In *Wiggin* v. *Swett*, 6 Met., 194, a construction was given to this section and this change in the law indicated. In that case, the widow of the testator was appointed executrix and entered upon the duties whilst sole, and settled several accounts. Before 1836 she married, and she, aided by her husband, went on with the settlement of the estate. SHAW, C. J., says, that, by the general law in 1830, when her second marriage took place, the husband became joint executor, and she, being sole executor, and not joint, rightly acted as such after her marriage. If so, then it is clear that a married woman may be an executrix, notwithstanding the provision of the statute respecting her vacating the office, if she held it when sole, if she is appointed during coverture, and does not come within the class named in the statute.

This case clearly shows that the statute is to be confined to the cases included in its terms,— and that until the new provision as to sole executor, made in 1836, a married woman could be an executrix, even when she had been appointed as such when unmarried. When the new provision was included, it simply excluded the unmarried sole executrix, who afterwards married, in the same manner and to the same extent that it before excluded her from acting longer, when she was joined with others in the trust. But neither the original statute nor the amended one reaches the

case of an executrix, made such when she is a *feme covert.* That is left as at common law.

This seems to be the view of Mr. Redfield. After referring to the fact that, in most of the States of the Union, when a *feme sole,* who is an executrix, marries, her power ceases from that time, he adds : — " But, where no statutory provisions exist upon the subject, the marriage of a *feme sole* will not probably have the effect to terminate the office." 2 Redf. on Wills, 60.

This was so determined also in *Barber* v. *Bush,* 7 Mass., 510, where it was held that when a *feme sole,* who was sole executrix, marries, she retains her office and her husband becomes joined with her. This decision probably led to the amendment made in 1836, which was intended to change the statute in this respect only. There seems to be no direct provision which declares that no married woman shall be an executor of a will. She may be such by the common law. We have no right to say more than the Legislature has seen fit to say.

The tendency of legislation, and apparently of public sentiment, is not in the line of restriction upon " woman's rights." But, if legislation in that direction is desired, it must be sought from the proper department.

> *Appeal sustained. — Judgment of the Probate Court reversed, and case remanded to that Court for further proceedings.*

APPLETON, C. J., CUTTING, WALTON, DICKERSON and TAPLEY, JJ., concurred.