# Tapia *v.* Williams, *et al.*

## *Ejectment.*

(Decided Feb. 9, 1911.    54 South. 613.)

1. *Bill of Exceptions; Settlement.*—The settlement of the bill of exceptions means an agreement upon the bill between the trial judge and the appellant.

2. *Same; Time.*—Section 3019, Code 1907, does not require settlement of bill of exceptions within ninety days, nor limit the power of the trial judge to the signing of the bill as presented as of that date; new exceptions cannot be incorporated after that time, however.

3. *Public Lands; Patent; Validity.*—A federal patent purporting to grant land to which the government has no title is void as an evidence of title, and may be so declared in an action at law at the instance of anyone in possession lawfully or under color of title.

4. *Ejectment; Evidence; Prima Facie Title.*—The fact that the occupants of land attorned to a certain person, is prima facie evidence of title in him on which he may recover as against a mere intruder.

5. *Same; Acceptance of Lease.*—The fact that tenants had a better title than their landlord does not raise a presumption that their acceptance of a lease of the premises was induced by fraud or mistake.

6. *Same; Outstanding Title.*—Where a defendant is in wrongful possession under no color of title, excepting a deed obtained for a nominal consideration, from one out of possession for sixteen years, and who had never claimed except as a squatter, and who had attorned to plaintiff's predecessor in title, cannot in ejectment show an outstanding title with which he shows no connection.

7. *Same; Title in Third Person.*—As a plaintiff in ejectment must recover upon the strength of his own title, ordinarily, a defendant may show that the legal title or the right of the present possession is vested in another, without connecting himself with such outstanding title.

8. *Same; Possession.*—Peaceable possession of land is prima facie evidence of title, and sufficient against those not showing a prior possession or better title; hence, recovery can be had on such proof against a mere intruder or trespasser, and a mere trespasser cannot set up as against one in prior possession an outstanding title.

9. *Words and Phrases; Good, Faith.*—Good faith means free from design to defraud.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

[Tipia v. Williams, et al.]

Ejectment by Emma C. Williams and others, against Joseph E. Tapia. Judgment for plaintiffs and defendant appeals. Affirmed.

FITTS & LEIGH, and IRWIN & MCALEER, for appellant. The Baptiste patent was admissible for two purposes: 1st, to show that the government had no title to convey to Eslava as it had already conveyed to Baptiste, and 2nd, that the patent of Baptiste showed an outstanding title in another.—*Dodge v. I. L. Co.*, 158 Ala. 95. No title passed to Eslava, and hence, plaintiffs failed to prove legal title, and they showed no actual precedent possession. It is manifest then that Eslava obtained no title.—*Bates v. Herron*, 35 Ala. 123. The defendant was entitled to show an outstanding superior title to defeat the claim of plaintiff, as the defendant entered under color of title.—*Dodge v. I. L. Co. supra; Stevenson v. Reeves*, 92 Ala. 583; *Crosby v. Pridgin*, 76 Ala. 385; *Guilmartin v. Wood*, 76 Ala. 209. The court erred in ruling out the deed under which defendant entered as color of title.—*Snedicor v. Freeman*, 71 Ala. 140; *Guilmartin v. Wood, supra; Stevenson v. Reeves, supra; Lucy v. T. & C. R. R. Co.*, 92 Ala. 582; *Jernigan v. Flowers*, 94 Ala. 508. Possession follows the legal title in the absence of proof of an adverse holding.—*L. & N. v. Philyaw*, 88 Ala. 268; *Jackson L. Co. v. McCrary*, 137 Ala. 281; *Reddick v. Long*, 124 Ala. 267. Where ownership is shown to have existed to real estate, it is presumed to continue until it is shown to have ceased.— *Lind v. Lind*, 54 N. W. 934; *Coleman & Burden v. Rice*, 31 S. E. 424; 7 Ball. Real Prop. sec. 285. No claim of adverse possession can be predicated on the payment of rent by McDonald to Eslava in response to his false representation that he owned the land, and she was consequently not bound by her attornment.—*Blankenship v. Blackwell*, 124 Ala. 362. Plaintiff must recover on his

own title, and hence, it fails to show title and cannot maintain ejectment against one in possession whether such one's title be valid or not.—*Stevens v. Moore,* 116 Ala. 397; *Lucy v. T. & C. R. R. Co. supra.* Where a plaintiff shows no other right of recovery than the presumption arising from possession, the defendant may defeat him by showing possession anterior to that upon which plaintiff relied.—*N. C. & St. L. v. Mathis,* 109 Ala. 377; *Theodore L. Co. v. Lyon,* in MSS. Counsel also discuss motion to strike bill of exceptions, with the insistance that there is no merit in it.

BESTOR, BESTOR & YOUNG, L. H. & E. W. FAITH, HAMILTON & THORNTON, and ROACH & CHAMBERLAIN, for appellee. Counsel insist that under section 3019, and under the following authorities, the bill of exceptions in this case should be stricken.—*Pearson v. Woodward,* 72 Ala. 348; *Moore v. Helms,* 77 Ala. 380; *Kyle v. Gadsden Co.,* 96 Ala. 376; *Beale v. The State,* 99 Ala. 234; *Ex parte Mayfield,* 63 Ala. 203. The 1, 2, 3, 4, 5, 6, 11, 12 and 13th assignments of error are not insisted on, and hence are waived—*Scarborough v. Borders,* 115 Ala. 436; *W. Ry. v. Arnett,* 137 Ala. 414. The defendant was not in position to show outstanding title, 1st, because he was a trespasser, and second because he was holding under a tenant of appellee.—*Barnett v. McCarty,* 157 Ala. 449; *Saltmarsh v. Crommelin,* 24 Ala. 352; *Gordon v. Tweedy,* 74 Ala. 234; 8 Wheat. 1; 53 Miss. 94; 65 Barb. 231; 4 A. & E. Enc. of Law, 616. One who claims under a grantor not in possession, and not claiming the land, cannot be a purchaser in good faith.—*Satlmarsh v. Crommelin, supra; Stevenson v. Reeves,* 92 Ala. 584; *Bradshaw v. Ashley,* 180 U. S. 65; *Wood v. Raeburn,* 22 Pa. 522. A trespasser cannot defeat an action in ejectment by showing an outstanding title with which he does

not connect himself.—*Crosby v. Pridgin,* 76 Ala. 285; *Stevenson v. Reeves, supra; Donahue v. Johnson,* 120 Ala. 438. The evidence showed no abandonment by appellee or his predecessor of the land, and no other or hostile possession.—*Hollingsworth v. Walker,* 98 Ala. 543; *Buck v. L. & N.,* 48 South. 699. Claiming from Cynthia McDonald, appellant is bound by the same estoppel that rests upon her not to dispute her landlord's title, or set up an outstanding title.—*Russell v. Irwin,* 38 Ala. 44; *Potts v. Coleman,* 67 Ala. 225; 24 Cyc. 934; *Donahue v. Johnson, supra.* It is an outstanding title that defeats ejectment, and not the mere fact that there is an outstanding deed.—*Black v. P. C. Co.,* 85 Ala. 511; *Jellison v. Pettus,* 132 Ala. 674. The court did not err in refusing charge 4 requested by the defendant.—*A. G. S. v. Hanbury,* 49 South. 467.

SAYRE, J.—Motion is made to strike the bill of exceptions on the ground that the bill found in the record is not the bill which was presented to the judge who presided at the trial within 90 days thereafter. The facts upon which the motion proceeds are to be found in the bill itself, and, with some condensation, may be stated as follows: Appellant—defendant below—presented his bill of exceptions within 90 days from the entry of judgment. Afterwards, and more than 90 days after judgment entered, appellees called the judge's attention to a number of alleged omissions and defects in the bill. At a conference of the judge and the attorneys on each side, appellant's attorney was allowed, over the objection of appellees, to amend the bill so as to meet some of the objections, while others were overruled. The bill, after stating these facts, proceeds: "And the defendant now presents and tenders this his bill of exceptions in the above stated cause, which is correct." And the same

was thereupon signed within 90 days of its presentation.
In the early days of the state's judicial history, bills
were sealed at any time, either during the term or aft-
erwards. In *Weir v. Hoss,* 6 Ala. 881, a bill was signed
more than a year after the lapse of the term at which
the trial was had. Since 1844 statutes have limited the
time for signing and sealing bills.—*Ex parte Nelson,* 62
Ala. 376. Section 3019 of the Code of 1907 introduced
a new order, as follows: Bills of exceptions may be
presented at any time within 90 days from the day on
which the judgment is entered, and not afterwards; and
all general, local or special laws or rules of court in con-
flict with this section are repealed, abrogated, and an-
nulled. The judge must indorse thereon, and as a part
of the bill the true date of presenting, and the bill
of exceptions must, if correct, be signed by him
within 90 days thereafter. It is safe to say that
the first draft of a bill, as presented, is rarely accurate
in every particular. Therefore a settlement of the bill
is everywhere recognized as necessary. We find nothing
in our latest statutory provision which requires that
bills must be settled—by which we mean agreed upon
between the judge and the appellant—before the expira-
tion of 90 days next after the trial, or, to state the prop-
osition a little differently, that after the expiration of
90 days from the trial the judge has power only to sign
the bill in its exact terms as of that date. That would
be a narrow view to take of the statute. On the contrary,
we think a reasonable interpretation of the statute leads
to the conclusion that the period of 90 days which the
statute permits to elapse between presentation and sign-
ing was intended to afford an opportunity, not only for
ascertaining whether the bill be correct, but, in the event
errors are found, for such settlement of the bill as will
make it present a true history of the exceptions present-
ed. Thus the idea that the bill signed must correspond

in every literal particular to the bill presented, if it happens to be presented on the last hour of the ninetieth day after judgment entered, is excluded. It is not to be understood, however, that the appellant may after the lapse of 90 days change his bill by the incorporation of other exceptions; nor, on the other hand, that he may not stand upon the literal accuracy of the bill first presented. The recital of the bill that the appellant presented and tendered his bill on the day of its signing, construed in connection with the recital of a prior presentation within 90 days from the entry of judgment, and the process of correction through which it went, means no more than the appellant acquiesced in those corrections and requested the judge's signature to the bill as amended. The motion is overruled.

. This is an action of ejectment in common-law form to recover a part of a tract of land known as the "Eslava Mill Tract." The nominal plaintiff laid the demise upon which he was permitted to recover in appellees, who derainged title by unbroken chain back to a Spanish grant to Don Miguel Eslava, confirmed by a patent from the United States of date June 9, 1849. This patent contained a reservation in favor of the just claims of a number of persons, including Jacob Baptiste, held in virtue of any patent previously issued. Plaintiffs proved possession by Lem and Cynthia McDonald during the years from 1867 to 1881, and payment of the rent by them to Jerome Eslava and Thomas J. Riley (who were at the time tenants in common and stood in the line of descent from Don Miguel Eslava, under whom plaintiffs claimed) during the latter half of that period; that in 1882, on a petition to the probate court, the tract had been sold for division among Riley and the heirs of Jerome Eslava, then dead; that plaintiff's ancestor had purchased at the sale; and that he and plaintiffs

had paid taxes on the property continuously since
the purchase. It is said for appellant that the
possession of the McDonalds should not inure to
the benefit of the plaintiffs for the reason that Je-
rome Eslava coerced her to the payment of rent
by a false or mistaken assertion that he owned the
land. The assertion of ownership being untrue, says ap-
pellant, neither the McDonalds nor defendant, claiming
under them, are to be affected by her attornment. But
we are unable to justify this contention of defendant by
anything to be found in the record. The effect of Mc-
Donald's testimony—and without contradiction—is that
she and her husband squatted upon the land in the year
1867 in perfect recognition of the fact that they had no
legal title or right to go there to the exclusion of any one
else. It may be conceded on the evidence that they there-
after for a time held adverse and exclusive possession.
To their possession, both parties refer their titles; the
plaintiffs to show their prior possession, and the defend-
ant as giving color to his claim of right derived from
them. Nevertheless, it appears, without contradiction
also, that after they had been upon the land for seven or
eight years, Eslava claimed the land as belonging to him-
self and Riley; that the rightfulness of his claim was
recognized; and that thereafter, and as long as the Mc-
Donalds remained in possession, they paid a monthly
rental to Eslava. This was prima facie evidence of ti-
tle in Eslava, on which he could recover against a mere
intruder.—*Haws v. Victoria Copper Co.,* 160 U. S. 303,
317, 16 Sup. Ct. 282, 40 L. Ed. 436; *Burt v. Panjaud,* 99
U. S. 180, 25 L. Ed. 451. Nor does it appear that Es-
lava's claim was false or mistaken, if that be material
to the issue of this case. True, there was the outstand-
ing patent to one Baptiste, to which we will refer pres-
ently. We remark, in passing, that the two patents,

either alone or both together, removed from this case all question as to outstanding paramount title in the government which seems to have been the cause of difference among the members of the court when considering *Dodge v. Irvington Land Co.,* 158 Ala. 91, 48 South. 383, 22 L. R. A. (N. S!.) 1100. But it is certain that prior to their attornment to plaintiff's predecessors in interest the Mc-Donalds did not hold under the true owner, whoever that may have been, nor had they acquired title by an adverse holding for 10 years. And, if it should be admitted that the tenants had a better title than their landlord, that fact would not of itself raise the presumption that their acceptance of a lease was induced by fraud or mistake.—*Thayer v. United Brethren Society,* 20 Pa. 60. There is a total lack of evidence to show fraud or coercion on the part of Eslava. To the contrary, everything goes to show that he claimed in good faith under the color of title now shown by plaintiff which had not been questioned since the patent of 1833 and was then unclouded by the claim which defendant long afterwards sought to acquire and assert. For aught that appears the McDonalds acknowledge the rightfulness of his claim without demur. On these facts then, the possession of the McDonalds must, for all the purposes of this case, be taken as the possession of those under whom plaintiffs claimed colorable title—a visible and notorious possession.

For the defendant it was shown that he had acquired, in the year 1898, a deed from one of the McDonalds—the wife—and on this color of title, and his own possession thereunder for eight years next before suit brought, as a predicate, defendant offered in evidence the patent of the land in controversy issued by the government of the United States to Jacob Baptiste in the year 1833. There was no effort to show that Baptiste, the defendant,

or anyone else had ever held possession under this patent since its issue, more than 75 years before the time of the trial. In offering this patent counsel for defendant stated that he did not claim any title through it, but offered it for the purpose of showing an outstanding title superior to the title of the plaintiffs. A patent issued by the government of the United States, purporting to grant lands in which the government has no title, is void as an evidence of title, and may be so declared in an action at law at the instance of any one who is in possession lawfully or under color of title.—*Bates v. Herron,* 35 Ala. 177. The effect of this patent of 1833, if admitted in evidence, would have been to destroy the completeness of the chain of muniments under which plaintiffs claimed, and we may concede for the argument that it would have established an outstanding title in Baptiste as of that date. On this concession it was certainly competent for the first-named purpose, and, being admitted in evidence, would have remitted plaintiffs to such presumptions of title as were raised by their prior possession of the character already noted and those other attendant facts to which we have referred. Leaving plaintiffs then to stand upon these facts without aid from their patent except as the first link in their colorable title, the inquiry is whether defendant should have been permitted to show outstanding title as he offered to do. The general rule is that the plaintiff in ejectment must recover upon the strength of his own title, and not upon the weakness of his adversary's. Hence, ordinarily, the defendant in ejectment may show that the legal title or present right of possession, is vested in a third person, and this without connecting himself with such outstanding title.— *Guilmartin v. Wood,* 76 Ala. 204. But peaceable possession of lands is prima facie evidence of title, and is sufficient evidence against all who do not show a prior pos-

[Tapia v. Williams, et al.]

session or better title.—*Mickle v. Montgomery,* 111 Ala. 415, 20 South. 441. Hence a recovery may be had as against a mere intruder or trespasser on proof of prior possession only.—*Dothard v. Denson,* 72 Ala. 541. Hence, also, a mere trespasser cannot set up against one in prior possession an outstanding title.—*Christy v. Scott,* 14 How. 282, 14 L. Ed. 422.

But what constitutes a mere intruder or bare trespasser within the meaning of the rule? In *L. & N. R. R. Co. v. Philyaw,* 88 Ala. 264, 6 South, 837, the defendant, for aught that appears in the evidence as reported in that case, entered without conveyance or delivery of possession. It was said that this fact presented the defendant in the attitude of a naked trespasser. Plaintiff in that case had held prior actual possession under claim or color of right. This actual possession did not continue to the time of defendant's entry. It was insisted by the defendant that plaintiff could not recover unless he showed an actual ouster—a disturbance of possession actual at the time of the defendant's entry. The court said : "In ejectment, and in its statutory substitute, title is always involved. Recovery is not allowed upon prior possession per se, strictly speaking, but on the title which prior possession evidences. It is a basis of recovery against a trespasser, not because of the abstract fact that the plaintiff has previously occupied the land, but because of the presumption of title in the plaintiff which that fact raises. That against a bare trespasser such possession is sufficient proof of title is the true meaning of the rule; and title once shown to exist, whether by the probative force of occupancy or otherwise, it is presumed—conclusively against such trespasser—to continue. It is not conceivable how, consistently with this well-established presumption of the continuance of title once shown, inquiry as to the period covered by prior possession, or as

to the point at which it determined, can become material." .The court held therefore that the law imputed title to plaintiff as against defendant which could not be defended against by proof of title in third persons between whom and the defendant there was no privity. In the recent case of *Dodge v. Irvington Land Co., supra,* the decision seems to have been that color of title does not save one who enters upon the possession of another from being a trespasser, for it is said that "a trespasser under color of title is entitled to no more conisderation than any other wrongdoer." In *Crommelin v. Minter,* 9 Ala., 594, the defendant, seeking to set up an outstanding title, offered no evidence as to how he derived his title or to justify his possession, and the court determined that, under such circumstances, they were bound to consider him an intruder. His offer to show outstanding title was denied. On a second appeal the defendant had connected himself with an Indian reservee, in whom it was conceded title and possession had been. It was thereupon said: "Without undertaking, at the present time, to give an accurate definition of the term 'color of title,' we deem it sufficient for the present case to say that it is that apparent right in the tenant, which he has derived by his paper title, which distinguishes him from the naked trespasser or intruder. He who holds under a paper title, therefore, which apparently gives him a right to the land, which would lead an honest mind to the conclusion that the right to the land passed by the deed, and more especially when the delivery of the deed is accompanied by livery of seisin, or possession of the premises purporting to be conveyed, must be considered as holding under color of title." And further on : "The purchase both from the reservee and from Taylor (reservee's grantee) is accompanied by a change of possession of the land, thus evincing the bona fides of the parties to the

transaction." And finally: "It may be conceded that the defendant has no title to the premises as against the government of the United States; yet it by no means follows that his possession is not under color of right. We consider every one as holding under color of title who enters bona fide, under and by virtue of a paper title; in other words, every one who is not a mere naked trespasser, and who is claiming in his own right under a paper title, is in under color of title. The defendant, therefore, holding under color of title, under the previous decision of the court in this case, is in a position to call in question the validity of the plaintiff's patent; or he may show an outstanding title in a third person, and thereby protect his possession."—*Saltmarsh v. Crommelin,* 24 Ala. 347. This case was reversed by the Supreme Court of the United States (*Minter v. Crommelin,* 18 How. 87, 15 L. Ed. 279), but the reversal did not affect the point in question. The authority of the case requires good faith as an element of color of title where the defendant seeks to set up an outstanding title with which he does not connect himself.—*Gist v. Beaumont,* 104 Ala. 347, 16 South. 20; *Goodson v. Brothers,* 111 Ala. 589, 20 South. 443. In *Sabariego v. Maverick,* 124 U. S. 297, 8 Sup-Ct. 480 (31 L. Ed. 430), the language is: "It (the rule that plaintiff may recover as against a trespasser on proof of prior peaceable actual possession) does not extend to cases where the defendant has acqquired the possession peaceably and in good faith, under color of title." We take "good faith" in this connection to mean freedom from design to defraud the person having the better title.—*Smith v. Ferguson,* 91 Ill. 311. And on general principles of right and justice we do not see why a deed should avail a party anything as color of title, enabling him to set up an outstanding title, when the grantor had no title and this is known to the grantee,

[Tapia v. Williams, et al.]

or it has been obtained in fraud of the true owner. To permit a trespasser claiming under such color to defend on an outstanding title would be to allow a wrongdoer to justify one wrong by adding to it proof of another. We will not be understood as saying anything in respect to that intention to claim title which must characterize the actual possession—possessio pedis—which will ripen into title by virtue of the statute of limitation, nor in respect to whether the bona fides of a color of title may be denied the effect of extending possessio pedis to the limits of the color after possession has been held under it for the statutory period.

In the case at bar defendants grantor testified that at the time of making her deed to defendant she told him that she claimed no interest in the land. This defendant denied, and for this reason her testimony as to this fact is laid out of the case. But it does appear, and that without denial on the part of defendant, that he took the deed under which he claimed on a nominal consideration from one who at the time had been out of possession for 16 years, who had never claimed except as a squatter, who more than 20 years before had attorned to plaintiff's predecessors in title, and who had no muniment of title, as defendant was bound to know. It is clear on these facts that the deed was taken, not as a conveyance of title, but to serve as color only, as an anchor to windward in case defendant's wrongful possession should be drawn into question. Reason and authority alike, we think, lead to the conclusion that defendant was properly denied the privilege of showing an outstanding title with which he showed no connection.

It appeared on the trial that a small part of the tract of land in controversy lay outside of the Eslava Mill tract, as that tract was originally located by the government survey. This part comprised about one-half an

acre lying in a narrow triangular shape about 1,100 feet along the east boundary of the tract. Plaintiff's muniments of title, except the Don Miguel Eslava patent, are not copied into the transcript. The county surveyor, as we understand his testimony, deposed that this strip was not included in the survey of 1841 by which the Eslava Mill tract was located. From a map which he put in evidence showing an old fence along the east side of this triangle, from its extraordinary shape as a division of land for practical purposes, and from the history of subsequent possessions, it seems clear enough that this strip is to be accounted for by the difference between the early and later surveys. Some of the title deeds, it seems, describes the tract in controversy by reference to the government survey of 1841. Others describe it as the Eslava Mill tract. The possession of the tract by the McDonalds extended to the east limit of this strip. Defendant's possession, held under alleged color of deed from the McDonalds, extends to the same line. On that line the McDonalds built a fence up to which they cultivated the soil. There is nothing in all this to impeach the bona fides of the possession acquired by Jerome Eslava, and, this being so, appellant's contention that plaintiffs should not have been allowed to recover this strip must be determined against him on the principles which have controlled the decision as to the body of the tract.

Dealing with the questions which have been presented by appellant—and they have been well presented to meet the merits of the case—we have discovered no reversible error in the record.

Affirmed.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.