90 So.2d 262

Curtis SMITH

v.

Roger F. RICE.

6 Div. 730.

Supreme Court of Alabama.

Sept. 6, 1956.

Rehearing Denied Nov. 15, 1956.

Fred Blanton, G. Ernest Jones and Beddow & Jones, Birmingham, for appellee.

A. H. Nichols and Jesse L. Drennen, Birmingham, for appellant.

GOODWYN, Justice.

This is an appeal by Curtis Smith from a decree of the probate court of Jefferson County, Alabama, granting letters of administration cum testamento annexo on the estate of Sallie W. Davis, deceased, to Roger F. Rice, appellee.

Sallie W. Davis departed this life in Jefferson County on December 17, 1953, leaving a last will and testament naming her adopted son, Jerre Lawrence Davis, a minor, as distributee of all her property, with the exception of one piece of furniture, and appointing the appellant, Curtis Smith, as executor of her will, without bond, and also naming him as guardian of Jerre Lawrence Davis during his minority.

On December 28, 1953, one Chism, stepfather of Sallie W. Davis, filed a petition in the probate court of Jefferson County for probate of the will. On January 4, 1954, Roger F. Rice, having been appointed as guardian of Jerre Lawrence Davis, filed, in his capacity as such guardian, a petition in the probate court objecting to the appointment of Curtis Smith as executor on the ground that his interest was adverse to that of the minor and praying that he (Rice) be appointed administrator cum testamento annexo. This petition was amended on March 8th, the amendment alleging Rice to be a fit and proper person to serve as such administrator, alleging certain deeds to Smith's wife and stepmother and a power of attorney to Smith's wife to have been obtained from Sallie W. Davis through fraud, and further alleging Curtis Smith to be unfit to be appointed as executor because of such fraud.

On January 31, 1954, Smith also filed in the same court a petition for probate of the will. On March 4, 1954, a decree was rendered admitting the will to probate on Chism's petition. No reference was made to Smith's petition for probate of the will nor to the prayer in Rice's petition seeking to have someone other than Smith appointer to administer the estate. That decree was the basis of the appeal in Smith v. Chism, 262 Ala. 417, 79 So.2d 45. We are not concerned here with any question about the probate of the will.

On March 4, 1954, Smith filed a petition to have himself appointed executor under the will. He also filed an answer to Rice's petition as guardian, above noted, denying

that the deeds and power of attorney were fraudulent, or that either he or his wife was guilty of fraud, and disclaiming any personal interest in any of the property belonging to the estate.

On March 15, 1954, the probate court, after the taking of testimony ore tenus, rendered a decree granting Rice's petition and ordering letters of administration cum testamento annexo issued to him. Said decree, from which this appeal is taken, is as follows:

"Sallie W. Davis, Sometimes Known As Sallie B. Davis, Deceased, Estate Of, In Re: Petitions For Appointment Of Executor, Etc. — Case No. 30458 — Probate Court — March 15, 1954.

"This matter coming on to be heard on the 4th day of March, 1954, upon the petition heretofore filed in this court by Roger F. Rice, as guardian of the estate of Jerre Lawrence Davis, a minor, by his attorneys, Beddow and Jones, for the appointment of Roger F. Rice as administrator cum testamento annexo and objecting to the appointment of Curtis Smith as executor under the will of Sallie W. Davis, sometimes known as Sallie B. Davis, deceased, and the petition of Curtis Smith praying that Letters Testamentary without bond upon said will of Sallie W. Davis, deceased, be issued to him; whereupon Curtis Smith did come and file his answer to the petition of Roger F. Rice; and on the 8th day of March, 1954, Roger F. Rice, as guardian of the estate of said Jerre Lawrence Davis, a minor, did come and file an amendment to his petition, invoking the equity jurisdiction of this court, objecting to the appointment of Curtis Smith as executor under the will of Sallie W. Davis, deceased, and praying for the appointment of Roger F. Rice as administrator cum testamento annexo of said estate; and, upon consideration thereof, it was ordered by the court that said amendment be allowed; and on the 10th day of March, 1954, Curtis Smith did come and file his amendment to his answer to petition of said guardian which, upon consideration thereof, it was

ordered by the court that amendment to said answer be allowed; and on the 12th day of March, 1954, Curtis Smith did come and file his second amendment to the answer to the petition, as amended, of said guardian, and, upon consideration thereof, the court did allow said second amendment to the answer of said petition, as amended;

"And the court, after hearing all the evidence submitted and the argument of counsel, did take said matter under advisement on the 12th day of March, 1954.

"Now, on this the 15th day of March, 1954, after due consideration, the court is of the opinion the prayer of said petition of Roger F. Rice, as guardian of the estate of Jerre Lawrence Davis, a minor, should be granted. It is, therefore,

"Ordered, Adjudged And Decreed by the court that the prayer of said petition, as amended, of Roger F. Rice, as guardian of the estate of Jerre Lawrence David [sic], a minor, be and the same is hereby granted and Letters of Administration Cum Testamento Annexo upon the estate of Sallie W. Davis, sometimes known as Sallie B. Davis, deceased, are ordered issued to Roger F. Rice, but it is further ordered that no letters issue for thirty days pending right of appeal."

This cause was submitted on appellee's motions to dismiss the appeal, to strike the transcript of the testimony, the "alleged bill of exceptions", the "alleged bill of exceptions, as amended", or, in the alternative, for a writ of certiorari for diminution of the record, and on the merits.

### Motion to Dismiss the Appeal.

■ The grounds of the motion to dismiss insisted on here are: First, that the decree of March 15th will not support an appeal by Curtis Smith, and, second, that Smith is estopped to prosecute this appeal because he took a position in the case of Smith v. Chism, supra, which is inconsistent with his position on this appeal.

With respect to the first ground, appellee insists that Smith has no right to appeal since the probate court took no action on his petition for appointment as executor but acted only on the petition of appellee, and further, that Smith was not a party to appellee's petition so as to give him the right of appeal from said decree.

We do not think the motion to dismiss is well taken. From the record before us it seems clear that the decree appealed from was not rendered in an ex parte proceeding. On the contrary, both appellant and appellee filed pleadings and amendments thereto, both of said parties were represented by counsel, and both called, examined and cross-examined witnesses. There is every indication that the parties considered themselves engaged in an adversary proceeding. Although the court did not expressly deny Smith's petition, it seems clear that the matter was being heard on Smith's petition as well as that of Rice. In fact, the decree itself recites that the hearing was not only upon Rice's petition but also upon "the petition of Curtis Smith praying that Letters Testamentary without bond upon said will of Sallie W. Davis, deceased, be issued to him". The claim that Smith was entitled to administer the estate in preference to Rice was the substantial matter in controversy. The contest was to decide these conflicting claims, the disposition of the matter depending entirely upon the recognition of one or the other of them. We think the decree, in appointing Rice, effectually denied Smith's petition, and that Smith's appeal from that decree is properly here. Code 1940, Tit. 7, § 776, Subdiv. 2. We here note what was said in Smith v. Chism, supra [262 Ala. 417, 79 So.2d 46]:

" * * * Unlike the situation presented in the case of Griffin v. Milligan, 177 Ala. 57, 58 So. 257, there are adversary parties to the instant appeal."

■ The other ground for dismissal which is urged upon us is that Smith has

assumed an inconsistent position to the prejudice of the adverse party and is, therefore, estopped from prosecuting the appeal. The principle sought to be invoked is "That a party is estopped to make a defense or objection inconsistent with a position previously asserted by him, which position was successfully maintained", so as "'to prevent inconsistency and fraud resulting in injustice.'" Fiscus v. Young, 243 Ala. 39, 41, 8 So.2d 514, 515.

Rice contends that Smith, in Smith v. Chism, supra, took an appeal from the decree admitting the will to probate while here asserting that the will was properly admitted to probate. From a reading of the opinion in the Chism case, it is quite apparent that the position there taken by Smith is not inconsistent with his position here. As stated in that case:

> "Smith concedes the validity of the will, admits that it should have been probated, and as shown above filed a petition to attain that end, which was before the probate court at the time the decree appealed from was rendered."

In essence, Smith's position in both cases is the same. He contends he should be appointed as executor of the will in accordance with the testator's directions and attempts to accomplish that end in both proceedings. We find no such inconsistency as will work an estoppel.

### Motions to Strike and Petition for Certiorari.

On June 11, 1954, Smith presented, within the 90 days allowed, a document which purported to be a bill of exceptions attempting to adopt therein, by reference, the transcript of the testimony taken on the hearing of the cause.

On July 30, 1954, a document entitled "Bill of Exceptions As Amended" was filed by Smith for the purpose of supplanting the bill filed on June 11th. This "amendment" was duly approved on July 30, 1954. No action was taken on the bill as filed on June 11.

It is apparent that what happened is this: Smith filed his first bill of exceptions near the end of the 90-day period and then realized that it would probably be inadequate because of the attempted adoption of the verbatim transcript. He then sought to remedy this situation by the "amendment" filed on July 30th, which was after the 90 days allowed for filing his bill of exceptions but within the 60 days allowed for approval. Hence, the questions presented by the motions to strike are whether such a procedure is authorized.

It is established that bills of exceptions in probate courts have not been abolished and that a certified transcript, as authorized by Code 1940, Tit. 7, § 827(1), may not be substituted for a bill of exceptions in probate courts. Terry v. Gresham, 254 Ala. 349, 48 So.2d 437. Whether or not this general rule is affected by the peculiar nature of the probate court of Jefferson County we do not need now to decide. See Act No. 633, Appvd. July 10, 1940, Gen. Acts 1939, p. 1000, Code 1940, Tit. 62, §§ 181(1)–181(7), Cumulative Pocket Part.

We consider the question to be governed by a long line of cases which lay down the proposition so well stated in Sovereign Camp, W. O. W. v. Moore, 237 Ala. 156, 158, 186 So. 123, 124:

> "A bill of exceptions duly presented within the ninety days required by law may, after the expiration of ninety days, and during the sixty days allowed for settling and signing the bill of exceptions [see Code 1940, Tit. 7, § 822], be corrected as to recitals of evidence or supplying omissions therein, at the instance of either party; but not by incorporating additional exceptions. In the latter case, we have held the bill of exceptions signed is not that presented within the time required by law, and must, on motion, be stricken. Tapia v. Williams, 172 Ala. 18, 54 So. 613; Illinois Cent. R. Co. v. Posey,

212 Ala. 10, 101 So. 644; Southern Wood Preserving Co. v. McCamey, 218 Ala. 201, 118 So. 393.

"The record here discloses only the incorporation of evidence omitted from the original draft of the bill of exceptions. The motion to strike the bill of exceptions is overruled."

In Tapia v. Williams, 172 Ala. 18, 22–23, 54 So. 613, 614, the court was dealing with the forerunner of § 822, Tit. 7, Code 1940, which was § 3019 of the Code of 1907. With respect to the time for settling a bill of exceptions, § 3019 permitted this to be done within 90 days after presentment of the bill. Section 822 requires the signing of the bill by the trial judge within sixty days after its filing. We quote the following from Tapia v. Williams, supra:

"* * * Section 3019 of the Code of 1907 introduced a new order, as follows: Bills of exceptions may be presented at any time within 90 days from the day on which the judgment is entered, and not afterwards; and all general, local, or special laws or rules of court in conflict with this section are repealed, abrogated, and annulled. The judge must indorse thereon, and as a part of the bill, the true date of presenting, and the bill of exceptions must, if correct, be signed by him within 90 days thereafter. It is safe to say that the first draft of a bill, as presented, is rarely accurate in every particular. Therefore a settlement of the bill is everywhere recognized as necessary. We find nothing in our latest statutory provision which requires that bills must be settled—by which we mean agreed upon between the judge and the appellant—before the expiration of 90 days next after the trial, or, to state the proposition a little differently, that after the expiration of 90 days from the trial the judge has power only to sign the bill in its exact terms as of that date. That would be a narrow view to take of the statute. On the contrary, we think a reasonable interpretation of the statute leads to the conclusion that the period of 90 days which the statute permits to elapse between presentation and signing was intended to afford an opportunity, not only for ascertaining whether the bill be correct, but, in the event errors are found, for such settlement of the bill as will make it present a true history of the exceptions presented. Thus the idea that the bill signed must correspond in every literal particular to the bill presented, if it happens to be presented on the last hour of the ninetieth day after judgment entered, is excluded. It is not to be understood, however, that the appellant may after the lapse of 90 days change his bill by the incorporation of other exceptions; nor, on the other hand, that he may not stand upon the literal accuracy of the bill first presented. The recital of the bill that the appellant presented and tendered his bill on the day of its signing, construed in connection with the recital of a prior presentation within 90 days from the entry of judgment, and the process of correction through which it went, means no more than that the appellant acquiesced in those corrections and requested the judge's signature to the bill as amended. The motion is overruled."

■ In view of the reasoning of these cases, we find nothing so objectionable in appellant's procedure as to require the imposition of the penalty of striking his bill of exceptions. Obviously, the amended bill does not attempt to incorporate any new exceptions after the time required for filing so as to bring this case under the influence of such cases as Illinois Cent. R. Co. v. Posey, 212 Ala. 10, 101 So. 644, supra, and Southern Wood Preserving Co. v. McCamey, 218 Ala. 201, 118 So. 393, supra. The amended bill in the present case did no more than restate the testimony and rulings in proper form as a substitute for the extensive verbatim transcript. We do not find error in the trial court's allowance

of it during the period authorized by statute for correcting the bill of exceptions.

For the reasons indicated, the motions to strike are overruled and the petition for certiorari is denied.

### On the Merits.

Rice insists that Smith is not entitled to be appointed as executor because of fraud. In our view of the case it is unnecessary for us to determine whether Smith, the person named in the will as executor, has been guilty of any fraudulent action.

Sections 68, 69 and 71, Tit. 61, Code 1940, provide as follows:

"§ 68. Grant of letters testamentary.—Whenever a will has been admitted to probate in this state, the judge of the court in which the will was probated may issue letters testamentary, according to the provisions of this article, to the persons named as the executors in such will, if they are fit persons to serve as such."

"§ 69. Persons disqualified as executors or administrators.—No person must be deemed a fit person to serve as executor who is under the age of twenty-one years, or who has been convicted of an infamous crime, or who, from intemperance, improvidence, or want of understanding is incompetent to discharge the duties of the trust. Nor shall any non-resident of the state be appointed as administrator except he be at the time executor or administrator of the same estate in some other state or territory or jurisdiction, duly qualified under the laws of that jurisdiction." (Note: Section 70 provides the form of letters testamentary.)

"§ 71. If executors disqualified, administration granted.—If the person named in the will as sole executor is, or if all the persons named therein as executors are, from any of the causes enumerated in the second preceding section, unfit to serve as executor or executors, letters of administration, with the will annexed, may be granted on the testator's estate, under the provisions of section 76 of this title."

It is a settled construction of these statutory provisions that the court cannot deny the application for letters testamentary of a person named in a will as executor except for one of the causes enumerated in § 69. Riley v. Wilkinson, 247 Ala. 231, 238, 23 So.2d 582; Thomas v. Field, 210 Ala. 502, 503, 98 So. 474; Kidd v. Bates, 120 Ala. 79, 83–86, 23 So. 735, 41 L.R.A. 154, 74 Am.St.Rep. 17. See, also, Annotations at 95 A.L.R. 828 and 18 A.L.R.2d 633.

This rule also applies to persons who are given priority by statute, § 81, Tit. 61, Code 1940, as amended by Act No. 635, appvd. Sept. 4, 1951, Acts 1951, p. 1090, in the grant of letters of administration. Griffin v. Irwin, 246 Ala. 631, 633, 21 So.2d 668, 158 A.L.R. 288; Moore v. Strickland, 246 Ala. 624, 625, 21 So.2d 665; Calvert v. Beck, 240 Ala. 442, 443, 199 So. 846; Johnston v. Pierson, 229 Ala. 85, 87, 155 So. 695; Bell v. Fulgham, 202 Ala. 217, 218, 80 So. 39; Nichols v. Smith, 186 Ala. 587, 590, 65 So. 30; Crommelin v. Raoull, 169 Ala. 413, 414–415, 53 So. 745; Williams v. McConico, 27 Ala. 572, 574.

In Riley v. Wilkinson, supra [247 Ala. 231, 23 So.2d 588], it is stated as follows: "The fitness of an executor named in a will is controlled by statute. Section 69, Title 61, Code * * *."

In Kidd v. Bates, supra, the court construed §§ 45, 46 and 48 of the Code of 1896, which, to the extent here pertinent, correspond to our present §§ 68, 69 and 71, Tit. 61, Code 1940, supra, and there held that upon an application for letters testamentary by a person named as executor in a will, the probate court has no authority to refuse to issue letters to such person for any other cause than those specified in the statute. What was there said is of controlling influence here, viz. [120 Ala. 79, 23 So. 736]:

"The theory of counsel for appellants is that the words 'if they are fit persons

to serve as such,' contained in section 45 [§ 68, Tit. 61], indicate a legislative intent to give a very broad discretion to the court in determining what are causes of disability, and who are fit persons to serve as executors, and that section 46 [§ 69, Tit. 61] was intended not to define all the causes of disability which should authorize the rejection of persons who apply for letters, but only to limit this discretion to the extent of forbidding the issue of letters to one who was under 21 years of age, or who had been convicted of an infamous crime, or who, from intemperance, improvidence, or want of understanding, was incompetent to discharge the duties of the trust. If section 45 stood alone, we would be inclined to adopt the construction contended for, and to declare that any cause which rendered the applicant unfit or unsuitable to serve as executor without detriment to the estate and undue advantage to himself would justify the refusal to issue letters testamentary to him. And upon this construction we would have no difficulty in determining that the facts alleged, if true, render the applicant for letters an unsuitable person to discharge the duties of the trust which require him to collect all the debts and other assets of the estate, and preserve them for distribution according to the provisions of the will, since his interests are clearly adverse to the estate, and antagonistic to the legatees and devisces and others interested therein. The decisions of the courts of all those states the statutes of which vest the court with the power and discretion to determine who are suitable persons to serve as executors so hold, and the correctness of these decisions cannot be doubted. Winship v. Bass, 12 Mass. 199; Drake v. Green, 10 Allen (Mass.), [124], 126; Thayer v. Homer, 11 Metc. (Mass.) [104], 110; Kimball's Appeal, 45 Wis. 391; In re Gleason's Estate [17 Misc. 510], 41 N.Y.S. 418. But the several sections of the Code referred to were adopted at the same time, are in *pari materia*, and must be construed together; and the construction of one, if doubtful, may be aided by a consideration of the words of, and the legislative intent indicated by, the others, and of the evil of the common law intended to be remedied. And a consideration of all the sections and of the common law relating to the subject, which they were intended to modify, leads to a conclusion which is opposed to the construction placed by counsel on section 45. It is a rule of statutory construction that a statute in modification or derogation of the common law will not be presumed to alter it further than is expressly declared. The presumption is that the language and terms of the statute import the alteration or change it was designed to effect, and their operation will not be enlarged by construction or intendment.—Cook v. Meyer Bros., 73 Ala. [580], 583; Webb v. Mullins, 78 Ala. [111], 113. The rule of the common law was that all persons might be appointed executors who were capable of making a will. Neither infancy, non-residence, coverture, intemperance, improvidence, ignorance, vice, dishonesty, nor any degree of moral guilt or delinquency disqualified one for the office. Idiots and lunatics were practically the only classes disqualified, and the rule now prevails generally that courts have no discretion in respect to the issue of letters to the persons nominated in the will, unless such persons are expressly disqualified, or such discretion is vested by law; and the person appointed by the will cannot be rejected by the court except where the law expressly so provides. 1 Woerner Adm'n, p. 503, *et seq.;* Schouler, Ex'rs, §§ 32, 33; 1 Williams, Ex'rs (7th Am.Ed.) p. 269; Redf. Wills, pt. 3, c. 2, § 3; Stewart's Appeal, 56 Me. 300; Re Smith's Appeal, 61 Conn. 420, 24 A. 273, 16 L.R.A. 538, and notes. Treating these several

sections of the Code as one statute, and construing accordingly, they not only fail to indicate any legislative intent to abrogate this rule of the common law, and vest a broad discretion in the court to determine what are causes of disability, but they show that such effect was not within the contemplation of the legislature, and that the only discretion intended to be conferred was that to be exercised in the determination of the existence of those particular causes of disability enumerated in section 46. The evil of the common law intended to be remedied by the statute was that persons were permitted to serve as executors who were clearly unfit to serve as such without undue advantage to themselves and consequent detriment to the estate. The purpose of the statute was therefore not to declare, except indirectly, by the process of exclusion, who were fit and competent persons to discharge the duties of the trust, since the common law declared all persons competent except idiots and lunatics, but to enumerate the causes which should render persons incompetent. In so far as it enumerates causes of disability not recognized at the common law, it must be treated as exclusive, containing all the causes which will authorize the rejection of the persons named in the will, and excluding all others, and as leaving the common-law rule as to competency and fitness unchanged except in the particulars specified. That this was the intention of the legislature is, we think, made manifest by the provisions of section 48, quoted above, which authorizes the grant of letters of administration with the will annexed only when the persons named in the will as executors are, 'from any of the causes enumerated in the second preceding section (section 46), unfit to serve.' The probate court has therefore no statutory authority to issue letters of administration with the will annexed unless the person named as executor in the will was under 21 years of age, or had been convicted of an infamous crime, or was incompetent to discharge the duties of the trust by reason of intemperance, improvidence, or want of understanding, except in the event of the death of the executor or his renunciation of the right to act, as provided in sections 51 and 54 [§§ 74 and 77, Tit. 61]. This failure on the part of the legislature to confer authority to grant letters of administration with the will annexed, except in the cases mentioned, clearly indicates that no causes of disability which could give rise to the necessity for the grant of such letters, other than those enumerated in section 46, were within the contemplation of the legislature when the act was adopted."

In the minor's petition filed by Rice, as guardian, for Rice's appointment as administrator cum testamento annexo, it is alleged that Smith's petition for appointment as executor should be denied for the following reasons:

" * * * [I]f the said Curtis W. Smith should be appointed executor of the estate of Sallie W. Davis, deceased, he would be unable to fairly, impartially, and courageously insist upon the accounting and other relief prayed for in said Bill of Complaint identified as Exhibit 'A' and it would be necessary for the Courts to remove him as an unfit and improper person to be the executor of said estate or in the alternative to appoint an administrator ad litem to appear and defend the litigation now pending for the accounting and setting aside of said fraudulent conveyances hereinbefore identified in this amended petition as Exhibit 'A' hereto, and it would be a vain and foolish thing for this Court in the exercise of its power and jurisdiction according to the special statute. applicable to Jefferson County, Alabama, to administer equity jurisprudence, to appoint the said Curtis W. Smith merely for the purpose of

removing him as an unfit and improper person and that the Court should do that directly, which must appear of necessity to be required to be done indirectly.

\*    \*    \*    \*    \*    \*

"\* \* \* [T]he appointment of Curtis W. Smith to be executor of the estate of Sallie W. Davis, deceased, would subject this petitioner to imminent peril of such an irreparable injury in that it would deprive this petitioner of the right to have as heir, distributee, or beneficiary, under the Last Will and Testament of said deceased, of exemption in a homestead and personal property accorded to him by statute, and to secure full, complete, and proper accounting of all the real, personal, and mixed property of the estate of Sallie W. Davis without undue cost and expense and litigation, and the appointment of an administrator ad litem, and subject him to imminent peril of irreparable injury which would probably and likely result to him, in the event Curtis W. Smith should be appointed to be the executor of the Last Will and Testament of Sallie W. Davis, deceased."

The position taken by appellee, as stated in his brief, is as follows:

"The equity jurisdiction of the probate court has been invoked and as said in Gewin v. Shields, supra [167 Ala. 593, 596, 52 So. 887, 888].

" 'There is no more common head of equity jurisdiction than to relieve against frauds'.

"If this appellant were executor he would be removed immediately for his fraud. Castleberry v. Hollingsworth, supra [215 Ala. 445, 111 So. 35]. It is then apparent that equity should not lend its powers to do an act which is useless. Dixie Grain Co. v. Quinn, supra [181 Ala. 208, 61 So. 886].

\*    \*    \*    \*    \*    \*

"\* \* \* The weight of the evidence is clearly with Appellee and the Court in the exercise of the equity jurisdiction, having resolved the issue of fraud against Curtis Smith, refused to do an utterly useless act by appointing Curtis Smith as executor.

\*    \*    \*    \*    \*    \*

"Your Appellee further urges strongly that the evidence and pleadings adduced in the court below strongly support the decree rendered in that there was substantial evidence that the named executor was by reason of his 'improvidence', as that term is used in Section 69, Title 61, Alabama Code of 1940, rendered unfit to serve as executor. His fraudulent collusion with his wife and his wife's mother, subsequent to the death of Sallie W. Davis, to despoil the estate and aid and assist them in retaining personal property and lands which of right belonged to the Estate of Sallie W. Davis, even to the extent of jointly employing counsel to defend litigation brought in behalf of the estate to recover such lands and personal property, indicated a lack of care and fitness which, if he were appointed executor, would endanger the assets of the estate, if he were so naive as to believe such conduct would be consistent with his duty to protect the estate, and his nomination for executor should be disregarded by the Court below under authority of Nichols v. Smith, 186 Ala. 587, 65 So. 30.

\*    \*    \*    \*    \*    \*

"\* \* \* The Court, in the exercise of its equitable jurisdiction which was invoked, would not do the vain thing of appointing the executor solely for the purpose of removing him on account of his frauds. Beyond all question it would have been a vain and useless procedure for the Court below to have appointed Curtis Smith as executor, thereby entailing much expense upon

the estate, when it was self-evident that the Court in the exercise of its equitable jurisdiction would be compelled to remove him eo instanti.

\* \* \* \* \* \*

"Appellee respectfully contends that there can be no doubt that under the evidence presented in the Court below and considered by the Probate Court, in the exercise of its equitable powers, Curtis Smith was and is a party who 'from his conduct or character there is reason to believe that he is not a suitable person to have the charge and control of the estate.'—Title 61, Section 178, Code of Alabama of 1940.

"Such being true, it would be the solemn duty of the Probate Court, or a court of Equity, to remove him from the administration of the estate eo instanti in obedience to the provision of Title 61, Section 178, Code of Alabama of 1940, if he were appointed. \* \* \*"

The court's decree does not indicate the basis of its refusal to appoint Smith as executor. Whether the court followed the argument here made by appellee that it would have authority to remove Smith as executor because of his alleged fraud and, therefore, it would be doing a useless thing to appoint him and then remove him, or that Smith was incompetent to serve because of his "improvidence", is not shown. However, it is our view, based on decisions of this court of long standing, that neither ground justifies the court's refusal to appoint Smith.

■ Whether the evidence is sufficient to support Smith's removal under § 178, Tit. 61, is not the question before us. We are concerned only with his right to appointment. Unless disqualified on one of the grounds set out in § 69, Tit. 61, supra, his application for appointment cannot be denied. Riley v. Wilkinson, supra; Thomas v. Field, supra; Kidd v. Bates, supra. The probate court is "without discretion to consider any other disqualifications than

those set down in § 69". Moore v. Strickland, supra. In Nichols v. Smith, supra [186 Ala. 587, 65 So. 32], it was held that "no alleged ground of disqualification can be considered, except such as are named in the statute". The fraud alleged against Smith is not one of the statutory grounds. Whether it should be is a matter which addresses itself to the legislature.

■ We are unable to agree with the argument that Smith was properly denied appointment because of his "improvidence", which is one of the statutory grounds for disqualification. § 69, Tit. 61, supra. Smith is charged with fraudulent conduct and the pleadings and evidence relate to that charge. We do not think the evidence establishes that Smith, from improvidence, as that term is used in § 69, is incompetent to discharge the duties as executor. What was said in Nichols v. Smith, supra, seems significantly applicable here:

"\* \* \* [W]e have cases holding that on the application of a person standing in the statutory preferred list no account may be taken of his general moral unfitness.. Williams v. McConico, 27 Ala. 572; Crommelin v. Raoull, 169 Ala. 413, 53 So. 745. \* \* \*

"Other statutory disqualifications finding no substantial support in the evidence, appellant's proposition is that the probate court should have held appellee to be 'improvident' within the meaning of the statute, and anyhow that his lack of appeal to the court's sense of moral fitness was a disqualification. Improvidence means a *lack of care and foresight, of forehandedness, of thrift, of business capacity*. It does not mean, however, that the capacity for care and foresight must needs be proved by the accumulation of any considerable estate, for men are largely creatures of time and chance. Improvidence in this connection means only that probable *lack of*

*care and foresight* in the management of the estate's only asset which would endanger its safety in case administration should be committed to appellee. * * *" (Emphasis supplied.)

"Improvidence" is thus defined in 42 C.J.S., p. 472:

"In general, a lack of business capacity, care and foresight, forehandedness, prudence, or thrift; and, more specifically, a want of care and foresight in the management of property. The term refers to habits of mind and conduct which become a part of the man and render him generally and under all ordinary circumstances unfit for the trust or employment in question; but does not necessarily imply a failure to accumulate any considerable estate."

Webster's New International Dictionary, 2d Ed., defines "improvidence" as "want of foresight or thrift".

See, also, Griffin v. Irwin, supra [246 Ala. 631, 21 So.2d 671], where the meaning of "improvidence" is discussed and where it is said that "incompetence must be established by clear and convincing evidence to defeat the right to letters."

The fact that the probate court of Jefferson county has equity jurisdiction in the administration of estates, Act No. 633, appvd. July 10, 1940, Gen. Acts 1939, p. 1000, Code 1940, Tit. 62, §§ 181(1)–181 (7), Cumulative Pocket Part, supra, does not alter the exclusiveness of the disqualifying grounds set down in § 69, Tit. 61. Priority of right to appointment given by statute, whether as executor or as administrator, is controlling so long as the one having such statutory preference is not disqualified on one of the grounds set forth in § 69. Authorities, supra.

It follows, from what we have said, that the decree is due to be reversed and the cause remanded. So ordered.

Motion to dismiss denied.

Motions to strike and petition for certiorari denied.

Reversed and remanded.

SIMPSON, MERRILL and SPANN, JJ., concur.