## SELLERS *vs.* SELLERS.

[BILL IN EQUITY FOR CONSTRUCTION OF WILL AND SETTLEMENT OF ESTATE.]

1. *What is revisable on error.*—On appeal from a decree of the chancellor, dismissing a bill, before final hearing, for want of equity, the appellate court will consider only the equity of the bill, and will not pass upon other questions which will probably arise in the progress of the cause.

2. *Jurisdiction of equity over construction of testamentary trusts.*—An administrator *de bonis non, cum testamento annexo,* may come into equity, to obtain the aid and direction of the court in the construction of the testator's will, where the trusts created by it are doubtful, difficult, and embarrassing.

3. *Construction of will as to liability of executrix to account.*—Where a testator directed that his entire estate should be kept together by his wife, as his executrix, "to be managed entirely at her discretion," for the use and benefit of his family, the support of his wife, and the support and education of his children; and further, that she should "not be held to account or to settle with the orphans' court for her management and possession of" the estate,—*held,* that the executrix was entirely exempt from liability to account for "the management and possession" of the estate, and was also relieved from the duty of settling in the orphans' court, but might be compelled to make a settlement in chancery.

APPEAL from the Chancery Court of Wilcox.

Heard before the Hon. WADE KEYES.

THE facts of this case, as disclosed by the bill, are these: Calvin C. Sellers died in Wilcox county, Alabama, on the 19th March, 1852, after having made his nuncupative will, which was duly admitted to probate on the 4th April, 1852, as follows: "I am not much in debt—I owe but little; but I want my debts all paid. The balance of my property I want kept together, under the control and management of my wife, to be managed entirely at her discretion, for the use and benefit of my family, for the support of my wife, and the support and education of my children; my property to be kept together and managed, for the benefit of my family, until such time as any of my children shall arrive at the age of twenty-one years, or, in case of my daughters, until any of them shall marry. When either of my children shall arrive at the age [of twenty-one], or when either of my daughters shall marry, I desire such child, so coming of age or marrying, shall then have his or her distributive share of my estate delivered to him or her. I desire that my wife shall carry out my intentions, and manage the whole of my property during widowhood; and I desire that my wife shall be exempted and relieved from giving any bond whatever as my executrix, but shall control the same without giving bond or obligation on account of her having my property under her control; and I further desire that my wife shall not be held to account, or to settle with the orphans' court, for her management and possession of my estate. I further direct and desire that, in no event, except under very extraordinary circumstances, shall the principal, or capital stock of my property, my negroes, &c., be sold or reduced, by my wife or any one else; except that mules, horses and stock, wagons, &c., may be bought, sold and exchanged to the best advantage, when necessary. In the event that my wife shall hereafter marry again, I desire that my brother, Daniel Sellers, if then alive, shall act as guardian of my children, and take possession of, and manage the estate of my children; and in the event of Daniel Sellers so becoming the guardian of my children and their estate, I desire that he shall be free and exempt from giving or making any bond or obligation as such

Sellers v. Sellers.

guardian; and if Daniel Sellers should not be living at such time as my wife may marry, then the orphans' court shall appoint a suitable guardian for my children; and should my wife marry again, I desire that she shall take of[f] her share of my estate, to which she would be entitled under the statute."

On the 3d April, 1852, letters of administration on the estate of said Sellers were granted to D. W. Sterrrtt and Jesse J. Cook; the object of the administration being to have a settlement of the decedent's administration on the estate of Henry S. Atwood, deceased. The administrators returned an inventory of the property belonging to the estate which had come to their hands, not including the negroes which had been hired out by the decedent in his life-time, and resigned their trust on the 6th September, 1852; and letters testamentary were on the same day granted to Mrs. Sellers as executrix. In January, 1853, Sterrett and Cook made a final settlement of their administration, and a decree was rendered against them, in favor of Mrs. Sellers as executrix, for $76 41, the excess of their receipts above their disbursements. The decedent's family, at the time of his death, consisted of his widow and nine children; and a posthumous child was born a short time after his death. All the children were minors, and lived with their mother, from the time of the decedent's death up to the filing of the bill. Mrs. Sellers, after her appointment as executrix, took the entire control and management of the estate, hired out some of the negroes, received the proceeds of their hire, collected the debts due to the decedent, paid the family expenses out of the moneys which came to her hands, and sent the elder children to school; but she kept no separate account of the expenses of the different members of the family, and made no settlements with the probate court. The decedent was mistaken in supposing, as stated in his will, that he owed but little : on the contrary, he was largely indebted. Sterrett and Cook, as administrators, paid off debts amounting to over $9,000; and a judgment for $8,573 was afterwards recovered against Mrs. Sellers, as executrix, on a liability incurred by the decedent in his

life-time. In January, 1853, a tract of land belonging to the estate was sold by the executrix, under an order of the probate court, for $8,748; but one-half the proceeds of the sale was paid by the executrix, through mistake, to one W. W. Robinson, who claimed a half-interest in the land under a written agreement between himself and the decedent, which was made an exhibit to the bill, and which provided for the erection and operation of a steam-mill on the lands at the joint expense of the parties. The executrix acted in good faith in her management of the estate, but, through ignorance, involved both herself and the estate in pecuniary embarrassments; and several judgments were rendered against her, both individually and as executrix, on liabilities contracted by her after the decedent's death. In August, 1858, Mrs. Sellers filed her written resignation as executrix, which was accepted by the court; and letters of administration *de bonis non*, with the will annexed, were thereupon granted by the probate court to Daniel Sellers, the brother of the decedent.

The bill was filed by the administrator *de bonis non*, against the widow and children of the decedent, asking the instructions of the court in the management of the estate, an account against the executrix, and a final settlement and distribution of the estate; and the several creditors who had recovered judgments against the executrix, were joined as defendants. The chancellor dismissed the bill, on motion, for want of equity; and his decree is now assigned as error.

ALEX. WHITE, for the appellant, cited the following cases, as showing that the bill contained equity: Pearson v. Darrington, 18 Ala. 348; S. C., 21 Ala. 469; Hunley v. Hunley, 15 Ala. 91; Elliott v. Mayfield, 3 Ala. 223; Horton v. Mosely, 17 Ala. 795; Montgomery v. Givhan, 24 Ala. 568; Gould v. Hayes, 25 Ala. 426; Dement v. Boggess, 13 Ala. 143; Leavens v. Butler, 8 Porter, 380; Trotter v. Blocker, 6 Porter, 269; Blakey v. Blakey, 9 Ala. 394; Balfour's Adm'r v. Carter, 19 Ala. 814; Abercrombie v.

Sellers v. Sellers.

Abercrombie, 27 Ala. 489; also, Hill on Trustees, 42, 239, 554; 1 Story's Equity, §§ 532–44.

D. W. BAINE, *contra*.—The bill does not state facts sufficient to uphold the jurisdiction of equity on any of the grounds which authorize that court to take cognizance of the settlement of an administrator's accounts. That it cannot be sustained as a bill for the discovery of assets, see Horton v. Mosely, 17 Ala. 794 ; Perrine v. Carlisle, 19 Ala. 686; Crothers v. Lee, 29 Ala. 337. Nor can it be upheld as a bill to settle complicated accounts. If any complication of accounts is shown, it is not in a matter in which the complainant is concerned. The widow is exempt from liability to account for her management and possession of the estate. Her beneficial interest under the will, in effect, extends to the entire profits and income of the estate, subject only to a trust for the support and education of the children.—Gourly v. Thompson, 2 Sneed, 387. Neither does the execution of the will involve any matter of purely equitable cognizance. The widow takes the control of the property under the will as trustee, and not as executrix; and the trust does not pass to the administrator with the will annexed.—Hitchcock v. U. S. Bank, 7 Ala. 387. The bill, then, does not contain equity, unless an administrator *de bonis non* always has the right to go into equity, to compel a settlement by the administrator in chief,—a position which cannot be maintained.—King v. Smith, 15 Ala. 264.

A. J. WALKER, C. J.—The chancellor dismissed the bill, for want of equity, before it was ripe for a hearing. Several questions, which counsel foresee will arise in the progress of the cause, as well as the equity of the bill, have been argued ; but we shall consider only the question decided by the chancellor. If we were to go beyond the question of equity in the bill, we would exercise original, not appellate jurisdiction. In two cases, this court has declined to pass upon any other question than the equity of the bill, when the chancellor dismissed the bill, for want of equity, on a final hearing.—Byrd v. McDaniel,

26 Ala. 582; Bondurant v. Sibley's Heirs, 29 Ala. 570. While we do not intend now to reassert the practice suggested by those cases, and lay down a rule which would preclude us from passing upon the merits of the case, when they were before the chancellor, but were left unconsidered, because he thought the bill did not contain equity; yet we are clearly of the opinion, that it would be improper for us to decide any other question than the equity of the bill, when there was a dismissal for want of equity before the hearing of the cause.

[2.] The chanceller erred in dismissing the bill. It is certain that the facts set forth by the complainant show that the duties of the trust devolved upon him are doubtful, difficult, and embarrassing; and he has a right to come into the chancery court, and seek its aid and direction, and to obtain a construction of the testator's will. Trotter v. Blocker, 6 Porter, 269–290; 2 Story's Eq. Jur. 436, § 1065.

[3.] It is claimed, also, that the bill contains equity, to take an account against Mrs. Sellers, the resigned executrix. The will directs, that the residue of the testator's property should be kept together, under the control and management of Mrs. Sellers, " to be managed entirely *at her discretion*," for the use and benefit of the testator's family, for the support of his wife, and for the support and education of his children. The will also expresses the testator's desire, that Mrs. S. should not be held to *account, or to settle with the orphans' court,* for the management and possession of his estate. So far as the conduct of Mrs. S. had reference to the support of the family, and the support and education of the children, she acted under a discretionary power, and would not be responsible, unless her conduct was fraudulent, which is negatived by the allegations of the bill. We think, too, that so far as *the mere " management* and possession of the estate" were concerned, the will exempts her from accounting, and also from the duty of settling in the court designated. Viewing the sentence as to the liability to account in connection with the discretionary power bestowed upon her, and looking to the grammatical construction of the sen-

tence, we understand it to relieve her altogether from liability to account for the " management and possession of the estate." The word *estate* is used in various senses. It is often used to designate the property composing the assets of a decedent; or the property, real and personal, belonging to an existing individual. In that sense, we think the word is used in the will. In the same connection, there is an exemption from liability to account for the possession of the estate. The thing intended to be designated, was something tangible—susceptible of possession, as well as management. The clause must, therefore, be understood to relieve her from liability to account for the management and possession of the property belonging to the estate, and coming under the operation of the will. She is also relieved from settling in the orphans' court ; but the words relieving her from that duty, do not have a sufficiently extensive import to justify us in holding her exempted from responsibility in any forum.

After conceding to Mrs. S. an exemption from accountability in the particulars pointed out, there remains, under the allegations of the bill, such a complication of accounts, connected with such trusts, as would authorize the chancery court to take jurisdiction.

We have avoided, in this opinion, the question, whether an administrator *de bonis non* can, in the absence of any special cause, come into the chancery court, to compel a settlement by his predecessor, before the jurisdiction of the probate court has attached. We mention the question for the purpose of saying, that its decision is not to be implied from our failure to notice it. Its decision in this case is not necessary.

The decree of the court below is reversed, and the cause remanded.

STONE, J., not sitting.