158 So. 522

### LINDSEY v. LINDSEY et al.
### 5 Div. 161.

Supreme Court of Alabama.

Oct. 11, 1934.

Rehearing Denied Jan. 24, 1935.

Jas. W. Strother, of Dadeville, for appellant.

Jacob A. Walker and O. P. Lee, both of Opelika, for appellees.

For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes

BOULDIN, Justice.

Appellant, having been removed as one of the coexecutors of the estate of his father, J. B. F. Lindsey, was brought to a final settlement in the probate court.

The present appeal is from the decree on such settlement.

The order of removal was affirmed on appeal. Lindsey v. Lindsey et al., 226 Ala. 489, 147 So. 425. A reference to that decision will disclose the issue there tried involved the validity of a check, purporting to have been given by the decedent to appellant for $8,000, and on which appellant had drawn from the bank said sum during his father's lifetime. It was there charged this check was a forgery, raised from $8 to $8,000, or was obtained by undue influence. The same issue and the same line of evidence were presented on the final settlement, wherein the removed executor was charged with the amount thereof.

On the final settlement a motion was made that Honorable W. C. Batson, the judge of probate, who had heard the case on application to remove the executor, recuse himself because he could not consider the case with an open mind free from bias, had a fixed opinion, and averring on information and belief that since the former proceedings the judge had been in consultation with opposing parties and their attorneys relative to the cause, and in which the case was discussed between them.

■ It is very properly admitted that the mere fact of hearing the evidence and rendering a decision adverse to appellant in the former proceeding would not disqualify the judge to try this case involving the same issue of fact. McConnell v. Goodwin, Judge, 189 Ala. 390, 66 So. 675, Ann. Cas. 1917A, 839; 7 Cyc. 588.

■ The evidence wholly fails to sustain any charge of consultation between Judge Batson and opposing parties or counsel. The accidental presence of Judge Batson, and one of the attorneys, at the home of John Lindsey, as callers, when John had received serious injury in an automobile accident, when appellant, John's brother, was also present, furnishes no color to a charge of bias. Any consultation is expressly disproven.

■ Moreover, the recognized remedy in such cases is by mandamus to require the judge to certify his incompetency, so that a competent judge may be appointed to hear the cause. Woodmen of the World v. Alford, 206 Ala. 19, and cases cited, page 22, 89 So. 528.

■ We entertain no doubt of the jurisdiction of the probate court to adjudicate the

question of liability here involved on a final settlement of the executorship of the removed executor under Code, § 5925.

██ If appellant obtained this money on a forged check, or one obtained from his father by undue influence, he became indebted to his father as for money had and received. On his qualification as executor of his father's estate, being both payor and payee, the law raises a presumption of payment; or otherwise stated, the debt became extinguished as matter of law, and the amount thereof became assets of the estate in the hands of the executor to be accounted for on final settlement of his trust. Miller v. Irby's Adm'r, 63 Ala. 477, 482; Cook v. Cook et al., Ex'rs, 69 Ala. 294; Wright v. Lang, 66 Ala. 389; Langley v. Langley et al., 121 Ala. 70, 25 So. 707; Childress v. Childress, 3 Ala. 752; Lindsey v. Lindsey et al., supra.

██ The mere fact that there is dispute as to the existence of an indebtedness, or the amount thereof, does not oust the jurisdiction of the court. One purpose of such settlement is to ascertain the assets for which the executor has become liable to account.

██ Dr. Schulhofer, qualified as a professional expert on handwriting and questioned documents, was properly allowed to give his opinion that the original check was drawn for $8, and that the word "Thousand," written between the words "Eight" and "no/100," was inserted at a different time, as also "000" following the figure "8" in the margin; and to proceed to give details, stated by him to be further disclosed by microscope and photograph, such as cramped mechanical condition of words inserted, different shadings of pencils used, touching up of figures after first written, etc. All this is within the scope of such examination, and to be weighed by the jury in the light of all the circumstances, including their own examination of the document.

██ That the witness was employed by the opposing side, for whom he was testifying, and paid a large per diem as a professional witness, went to the weight of his testimony, not to its admissibility.

██ In the examination of J. J. Lindsey, one of the executors and distributees of the estate, he was permitted to testify, over objections to his competency as a witness, to a statement made by his father, the decedent, in the presence of appellant, Ed. B. Lindsey, touching money in the bank.

Witness testified that in the early part of 1930, more than a year after this check had been cashed at the bank, his father "said that he had about $10,000.00 in the bank to be divided among his children, and he wanted me to see it was divided equally." Witness further stated: "Ed. was present. * * * Ed. never opened his mouth." Without dispute there was some $10,000 in the bank prior to the cashing of this check, and thereafter it was reduced to $2,000 and below.

This line of testimony from several witnesses was introduced on the former hearing, and was repeated by both sides on the trial now for review. The testimony was held not subject to objection as hearsay. 226 Ala. 491, 147 So. 425. We adhere to such ruling.

The opinion, by way of precaution, noted this was the only specific objection made on that trial.

Appellees seem to rely on an expression in the former opinion as follows: "The averments of confidential relations between the donor (who, in the circumstances, is to be regarded in the light of a testator, one making a disposition of his estate in anticipation of death) and the donee, a favored beneficiary among the natural objects of his bounty, together with the alleged activity of the donee in drawing and procuring the execution of the check, with further averments of dominating influence, present a proper issue of undue influence." 226 Ala. 491, 147 So. 425, 426.

It is insisted this expression denotes that this controversy is similar to that upon a contest of the will, in which the quantum of the estate is not involved, but merely beneficiaries entitled to take.

The quoted expression was dealing with the law of undue influence, distinguishing this case from the ordinary case of gifts inter vivos. We would make it clear that such expression had no reference to the competency of witnesses.

The issue here goes directly to the quantum of the estate to be distributed under the will of decedent. Did this money belong to decedent at the time of his death, or did it belong to Ed. Lindsey?

Witness J. J. Lindsey was a "party having a pecuniary interest in the result of the suit or proceeding, testifying against a party to whom his interest is opposed, as to * * * a statement by the deceased person whose estate is interested in the result," etc. We think he is within the letter of the statute, Code, § 7721.

The case of Dent v. Foy, 210 Ala. 475, 98 So. 390, relied upon by appellees, dealt with

an issue whether certain items given to decedent's children in his lifetime should be considered gifts or advancement.

The holding that interested parties were competent witnesses was rested upon the ground that in neither event were they a part of the assets of the estate for distribution, but had passed out of the estate; and whether they were gifts or advancement went only to the distribution of the estate left at testator's death, and the estate was, therefore, not interested.

We do not consider it an authority here. As stated, the direct issue here is whether this money, or demand against Ed. Lindsey, was assets of the estate for distribution.

Unless it can be said that controversies of the class before us are not within the spirit and purpose of the statute and should be treated as dealing with one estate, and its distribution, and that better results will be obtained by permitting all parties to give evidence, it seems the statute should be given application.

We do not find it necessary to give a final announcement on the question, for the reason that the testimony of J. J. Lindsey was properly admitted on another ground.

He testifies his brother, Ed. Lindsey, was present. Their father was a very old man, near 83 years of age, was confined to his bed. For years Ed. had been in close confidential relations, looked after his affairs, and, it may well be inferred, knew his father did not have this money if the check was genuine, and that when he passed away suspicion and controversy were almost certain.

Under such circumstances, if the statement of his brother was true, it was Ed.'s duty to speak. His silence is a circumstance against him in this case. Ivy v. Hood, 202 Ala. 121, 79 So. 587; 22 C. J. page 322, § 357.

The matter thus becomes one between living parties, both of whom testified; Ed. denying such occurrence. It was for the trior of fact to judge between them.

On appeals from the probate court, "in all cases where it may of right be done, the appellate court shall render such decree, order, or judgment as the court of probate, or the judge thereof, ought to have rendered." Code, § 6114; McGowan v. Milner, 195 Ala. 44, 70 So. 175; Bean v. Bean, 217 Ala. 93, 114 So. 692; Henderson v. Wright, 220 Ala. 369, 125 So. 333.

We are of opinion the court below rendered the decree which ought to have been rendered.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.