Hugh Walker and Merrill, Jones & Whiteside, all of Anniston, for appellant.

Merrill & Merrill, of Heflin, for appellee.

BOULDIN, Justice.

Action of unlawful detainer.

The controlling inquiry is whether there existed the conventional relation of landlord and tenant essential to the maintenance of this summary action under our statute.

The case arose under a mining lease. Appellee and wife executed to appellant an instrument with the formalities of a deed. Its pertinent provisions are:

"Parties of the first part, in consideration of the sum of one dollar and other valuable consideration do hereby grant, demise and let unto the party of the second part and assigns, all the minerals in and under the following described tract of land, and also the said tract of land for the purpose and with the exclusive right of mining and operating thereon, also such other provisions as are necessary for conducting said operations (then follows a description of the tract, 1360 acres).

"To have and to hold the same unto the party of the second part, his heirs and assigns, for the term of five (5) years from date hereof and as much longer as minerals are found in paying quantities thereon, allowing and paying to the party of the first part as Royalty 10% of all monies received from sale of such minerals; payments to be made within 30 days after shipments are marketed.

"Lessee agrees to enter upon said lands and begin operation within sixty days from date hereof. It is further agreed that failure to operate for sixty consecutive days without the consent of lessor shall act as forfeiture."

Plaintiff, appellee, relied upon evidence of forfeiture under the terms of the instrument prior to the expiration of the five-year period.

How far mining leases of this character create the relation of vendor and purchaser, and how far the relation of lessor and lessee in the ordinary sense, has been the subject of much discussion in the courts with quite varying results.

This court twice considered the question in Brooks et al. v. Cook et al., 135 Ala. 219, 226, 34 So. 960, and Id., 141 Ala. 499, 505, 38 So. 641. The action was to recover minimum royalty under lease to mine iron ore. The defense was that no iron ore existed in the land.

Holding that in such case no royalty was due, this court on first appeal (135 Ala. 219, 226, 34 So. 960, 962) said: "For, after all, the lease was nothing more nor less than a sale by them of iron ore, which they supposed they owned, hidden, it is true, under the earth—a supposition also indulged by the lessees."

On second appeal the question arose whether such lease was a conveyance of real estate which must be executed with the formalities of a deed under our statutes. This court (141 Ala. 499, 505, 506, 38 So. 641, 643) said:

"Rent is the consideration paid for the use of the land.

"Whether you denominate it a lease or by any other name, when a man acquires the right to take ore out of the land, he takes away a part of the substance of the real estate itself, and whether the consideration be called 'royalty,' or by any other name, it is paid for the purchase of the substance which is taken away.

"Consequently, such a contract is a conveyance of a part of the real estate, and must be executed with the formalities required for conveyances of real estate. Milliken v. Faulk, 111 Ala. 658, 20 So. 594.

"In a case before the House of Lords in England, which was a mineral lease for 21 years, Lord Cairns said: 'Although we speak of a mineral lease, or a lease of mines, the contract is not, in reality, a lease at all in the sense in which we speak of an agricultural lease. There is no fruit; that is to say, there is no increase, there is no sowing or reaping in the ordinary sense of the term, and there are no periodical harvests. What we call a mineral lease is really, when properly considered, a sale out and out of a portion of land. It is liberty given to a particular individual, for a specific length of time, to go into and under the land, and to get certain things there, if he can find them, and to take them away, just as if he had bought so much of the soil.' Scotch & D. Appeals, L.R. pp. 273, 283, 284.

"The great weight of authority, as well as the logic of the situation, so fully bear out this principle that we consider it fully settled that minerals in the earth are a part of the real estate, and that any instrument by which they are conveyed must be executed in accordance with the law in regard to conveyances of land. 2 Lindley on Mines, § 812, 859b, 861; Barringer & Adams on the Law of Mines and Mining, pp. 35, 36; Caldwell v. Fulton, 31 Pa. 475, 72 Am.Dec. 760."

In the later case of State v. Roden Coal Co., 197 Ala. 407, 73 So. 5, the question was whether under a coal mining lease the lessee owned the coal in such sense that it became assessable for taxes against him as the owner of a mineral interest under our tax statutes. After a review of authorities dealing with similar tax statutes, holding they covered only "freehold estates" in minerals in situ, with other authorities as to the nature of mining leases, the court said: "We conclude that the interest of the lessee, under the contract referred to in the above statement of facts, was a leasehold interest, a chattel real, and that the lessee was therefore not the 'owner' of the coal in situ within the meaning of the language of subdivision 1 of Code, § 2082." 197 Ala. 407, 415, 73 So. 5, 8.

The stipulations of the mining leases involved in our cases above appear in the reports of same. We may mention that in neither case appeared the word "grant," as in this case.

It may be conceded that in Brooks et al. v. Cook et al., supra, the court stressed the views generally known as the Pennsylvania rule, following the English view, while in State v. Roden Coal Co., supra, the court stressed the views generally known as the New York rule. See note, 9 Ann.Cas. 524.

We find no occasion here to question the soundness of either of our decisions, supra,

as applied to the issues there before the court.

Manifestly minerals may be severed and conveyed in place as a distinct estate, as by a clear unconditional grant on a valuable consideration, or by reservation in a deed passing all other interests in the land.

But whether an instrument, such as here involved, possessing earmarks both of a grant and a lease, shall be construed to pass a legal title subject to defeasance, or a leasehold interest, chattel real, speaking broadly, we deem unnecessary to a correct decision in this cause.

All the cases agree that such a lease passes a property right in the minerals, the right to locate, sever, and convert to personalty. Just when the legal title vests in the lessee is not controlling here. Granting that as to the ownership of the minerals the contract is executory, vests on mining them, it none the less does empower the lessee to take possession of, and sever as his own a part of, the realty itself.

A vendor and vendee of realty by executory contract do not, on forfeiture of the vendee's interest, become landlord and tenant within our unlawful detainer statutes, in the absence of an express stipulation to that effect. Brown v. Beatty, 76 Ala. 250; Jordan v. Sumners, 222 Ala. 314, 132 So. 427; Gault v. McCalley et al., 227 Ala. 381, 149 So. 841.

A mining lease, carrying only the possessory rights needful for the mining operations, does not pass that full and exclusive possession obtaining between landlord and tenant of farm lands, or of business or residence property. The possession under the mining lease is limited, an incident to the main purpose, that of passing to the lessee the minerals on location and severance of same. The termination of such possessory interest is dependent on the termination of the property right in the minerals, not a right of user merely. Essentially, therefore, the right of the lessor to end the possessory right of the lessee turns on the fact that the lessee has ceased to hold a property interest in the land itself, a question of title.

All the questions which may arise on issues of forfeiture for breach of conditions subsequent may become involved in a possessory action of this kind.

Ejectment has been recognized by this court as a proper remedy to recover mineral interests in lands. Moragne v. Doe, ex dem. Moragne et al., 143 Ala. 459, 39 So. 161, 111 Am.St.Rep. 52, 5 Ann.Cas. 331.

We conclude the action of unlawful detainer, a summary action cognizable in a justice court (Code 1923, § 7998), forbidden by the Constitution (1901, § 168), as well as by statute (Code 1923, § 8012), to inquire into issues as to title, does not lie in this case.

For general principles involved, see 18 R.C.L. p. 1186, § 96; 136 C.J. p. 627, § 1809.

Appellee insists the case has become moot because the five-year period named in the lease has expired pending the appeal. Aside from the fact that in certain events the lease is not to expire at the end of five years, the judgment appealed from included damages for detention. Questions of liability on the supersedeas bond on appeal from the justice to the circuit court and from the latter to this court turn on the result of this appeal. It is not, therefore, a moot case. Postal Tel.-Cable Co. v. City of Montgomery, 193 Ala. 234, 69 So. 428, Ann.Cas. 1918B, 554.

Nor does the evidence of assignment of the lease by defendant to his sons in any way affect the merits of the case. It is not a question of plaintiff parting with his cause of action, etc., pending the suit.

Plaintiff's entire case rests upon the proposition that defendant entered into possession as tenant of plaintiff, as landlord, and at time of suit brought was continuing to hold, notwithstanding such possessory right had terminated.

Appellee presents an elaborate brief on the effect of a supersedeas bond, given after the writ of possession was issued. No consideration of that question is material.

By petition appellant exhibited to us a decree in equity in which, for reasons not necessary to repeat here, the trial court enjoined any interference by plaintiff, appellee, with the possession and operations of appellant pending this appeal. Such injunction being limited in time to the date of submission of the cause in this court, we, under well-known authority to preserve matters in statu quo pending appeal and on appellant's application, extended such injunction pending appeal. Now, on reversal of the judgment on which the writ of possession was issued, that writ and all action under it is vacated, so that the status of possession from this date should be and remain

just as when suit began until otherwise adjudicated, or changed by consent.

We take it no further order on this line is needed.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.

Supreme Court of Alabama.

Oct. 15, 1936.