23 So.2d 582

**RILEY et al. v. WILKINSON et al.**

6 Div. 232.

Supreme Court of Alabama.

June 30, 1945.

Rehearing Denied Nov. 1, 1945.

232

Horace C. Wilkinson, of Birmingham, for appellants.

Bradley, Baldwin, All & White, of Birmingham, for appellees.

234

FOSTER, Justice.

This appeal relates to a proceeding which occurred pending the administration of the estate of Edward Wilkinson, Sr., deceased. He left a will in which was created a trust. He had executed before he died five living trusts. He named his son Edward Wilkinson, Jr., and his daughter, Mrs. Lanier, coexecutors and cotrustees. Mrs. Lanier resigned as such, and the court appointed in her place Bethea McCall. Decedent owned at the time of his death one hundred and fifty-one shares of the common stock of the Western Grain Company, a corporation. He had placed one hundred and twenty other shares of the corporation in the living trusts. Pending the administration, removed to equity, a demand was made by the internal revenue collector for the payment of a claim of approximately $50,000 for a deficiency estate tax. He seized a certificate of stock representing one hundred and fifty shares and a certificate representing one share issued to the said Edward Wilkinson, Sr., in his lifetime, and threatened the sale of it, worth large-

ly more than the tax claim. In lieu of the certificates another had been issued in the name of the executors. This had not been seized.

The instant petition, known as that of October 16, 1943 (M.R. 1, page 206 B, this record page 9), was to the court of equity administering the estate by the coexecutors seeking direction as to the payment of that tax. The court overruled the demurrer to the petition, and ordered a sale of enough of the stock in the corporation to discharge the claim (M.R. 1, page 285, this record page 92). Some of the parties have appealed to this Court. The issues so presented are here involved.

In ordering the sale, the court directed as follows: "The executors are hereby authorized and directed to sell a sufficient number of shares of the common stock of the company held by the estate of the decedent to yield an amount not less than $51,700, and not more than $55,000, the sale to be made in the following manner: at 11 o'clock A. M., on Friday, January 21, 1944, the executors shall offer said stock for sale in this court in the presence of the special judge, and sell the same to the highest and best bidder for cash. The highest and best bidder shall be the person who offers the highest price per share for such stock, unless two or more bidders offer the same price per share, in which case the bidder who offers to buy the larger number of full shares (within said limit as to maximum price) shall be deemed the highest and best bidder. No fractional share shall be sold."

### The Cross-Bill.

In respect to the petition, a cross-bill was filed, in which it was sought to have the court inquire into the bona fides of case No. 55708, pending as an independent suit in that court. That suit is not incidental to the administration, but relates to a controversy between the heirs and beneficiaries of the estate, in which their interest in it is affected as well as a certain claim of the Western Grain Company, which we will call the corporation. A previous suit between them had been settled which released the claim of the corporation against decedent. Case No. 55708 made an attack against that settlement as being fraudulent and void.

The instant cross-bill asked the court to decree (as quoted from appellant's brief) "(1) that case No. 55708 was collusively filed and should be dismissed; (2) that the grandchildren of the decedent had no right, title or interest in the one hundred and fifty-one shares of common stock of the Western Grain Company held in his estate and that they had no right, title or interest in suit No. 55708, and were not entitled to file and maintain it; (3) the removal of Edward Wilkinson, Jr., as executor and trustee; (4) appointment of a disinterested person to succeed him; (5) that the disinterested executor be authorized to negotiate with the Western Grain Company for a sufficient sum of money with which to pay the taxes mentioned in the petition, on the terms and conditions agreeable by him to be approved by the court; (6) that this cross-bill and case No. 55708 be consolidated and heard at the same time; (7) that Edward Wilkinson, Jr., individually, and as executor of the will of the decedent be enjoined from instituting vexatious litigation against the Western Grain Company; (8) that the directors of the Western Grain Company were under no duty to declare a dividend for the year 1943; (9) that it was the duty of the executors to sell all of the common stock of the Western Grain Company in the five living trusts and held in the five living trusts and held in the estate of the decedent; (10) that any sale of stock be made free of all liens and claims against the stock be transferred to the proceeds of the sale; (11) that the executors be instructed it was their duty to submit differences respecting the administration of the estate to arbitration and the cross-respondents (complainants) prayed for general relief."

Cross-complainants contend by their cross-bill that the pendency of case No. 55708 cast a cloud upon the title of the estate to that stock and that the claim of its collusion and fraudulent character ought to be heard and considered with this petition, and disposed of so as to free the stock from that cloud and justify the expectation that the price at the sale would be thereby improved.

The controversy with respect to case No. 55708 was primarily between the heirs and beneficiaries under the will of decedent. If that cause was so collusive and fraudulent as that it should be dismissed, it is contended, the effect would be to fix a status whereby the claim of indebtedness by the corporation against decedent, which it is alleged creates a lien on his capital stock in it, would stand discharged by the

decree in the former suit, so as to free the stock from the burden of that claim. As to whether the lien for its security takes priority over that of the United States for estate taxes, see United States v. Waddill, 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294.

But it is insisted that if case No. 55708 be prosecuted to a successful end the effect would be to leave in existence a controversy as to the validity of that claim and the priority and effectiveness of its lien. So that, it is contended, as long as case No. 55708 is pending that cloud exists; and that therefore on the cross-bill, the court upon hearing the instant petition should inquire into the collusive charge affecting the bona fides of the suit, and if found to be a fraud upon the court, that declaration be made to that effect whereby that suit will be disposed of.

■ We do not think the contention can be maintained in a cross-bill filed in respect to the pending petition, nor any of the matters there sought to be adjudicated. There are two good reasons why this is so. The first is that a cross-bill must set up matter germane to the original bill. Lowery v. Rosengrant, 216 Ala. 364, 113 So. 237; Ashe-Carson v. Bonifay, 147 Ala. 376, 41 So. 816; Howell v. Randle, 171 Ala. 451, 459, 54 So. 563. That means that its object and purpose must be defensive and seek to defeat a recovery in whole or in part, or to modify a recovery. Maryland Casualty Co. v. Holmes, 230 Ala. 332, 160 So. 768; Emens v. Stephens, 233 Ala. 295, 172 So. 95.

The instant cross-bill is not defensive, it does not submit matter sufficient to defeat or modify a recovery. To that extent it differs from the case of Howell v. Randle, supra.

The purpose of the petition is to determine whether the stock should be sold or some other means be resorted to to meet a debt which the court thought was urgent. That debt was secured by a lien which may or may not be superior to that of the corporation. Whatever right the estate had in that stock could be sold subject to the priorities of claimants. On such a petition, the court will not stop to entertain a cross-bill bringing forward a controversy in respect to a third party as to the existence and priority of his claim as a lien, and settle complicated issues involving the bona fides of an independent cause now pending which may affect that issue, nor enter into a trial of the merits of that cause, if the charge of collusion is found not to be fatal to it, nor enter into a trial of other collateral matters not defensive in scope.

The second reason is that the court in which case No. 55708 is pending has plenary power to determine whether its jurisdiction is collusively sought and whether the case should be dismissed on that account. United States v. Johnson, 319 U.S. 302, 63 S. Ct. 1075, 87 L.Ed. 1413; Rhea v. Hackney, 117 Fla. 62, 157 So. 190; 1 Corpus Juris Secundum, Actions, § 19, page 1060, notes 36 to 39.

■ When a party to a case has ample opportunity in that proceeding and before that court to have the question determined as to such fraud or collusion as well as any other theory on which it should be dismissed (or if a judgment, that it be vacated), a court of equity will not entertain an independent suit to accomplish that purpose, Kelley v. Chavis, 225 Ala. 218, 142 So. 423; Barton v. Burton Mfg. Co., 202 Ala. 180, 79 So. 664; Hatton v. Moseley, 229 Ala. 240, 156 So. 546; Leath v. Lister, 233 Ala. 595, 173 So. 59: nor a cross-bill in a collateral proceeding, Penton v. Brown-Crummer Inv. Co., 222 Ala. 155 (15), 131 So. 14.

■ Another reason why the court cannot be reversed insofar as the cross-bill is concerned is that there was no ruling by the court which is subject to review or which is assigned as error. The assignment in that respect is that the court erred in confining the hearing to the petition, and in declining to consider and decree on the matters and things set up in the cross-bill. There was a demurrer by Mrs. Lanier and one by Edward Wilkinson, Jr., to the cross-bill, but the record shows no submission on that demurrer nor a ruling on it. There is no answer to it appearing in the record. This Court has held that the trial court has a discretion to proceed to a hearing on the original bill without considering the cross-bill where cross-complainant has not taken necessary steps to get the cross-bill at issue and prepare same for trial. Thomas v. Skeggs, 223 Ala. 598, 137 So. 443; Carson v. Sleigh, 201 Ala. 373 (6), 78 So. 229.

To get the record in shape to review the trial court in respect to the cross-bill, the cross-complainant should cause a submission on the demurrer, and as to those who did not demur should obtain a decree pro confesso.

But the same facts are set up in the answer as well as the cross-bill, and while no relief could be granted as to the cross-bill, the facts as alleged so far as pertinent were proper for consideration in acting upon the petition. We do not think they set forth any reason why the decree granting the petition and providing the details for raising the fund should be reversed, for reasons which we will now discuss on the merits of the petition.

## On the Merits.

■ Is the order of the judge directing the manner in which the money should be raised to pay this estate tax due to be reversed because it is the result of an arbitrary ruling, without the support of a reasonable construction of the evidence before him, or without authority of law? Appellant makes such claim. We review the decision of the trial court not as an original proposition before this Court. The parties and witnesses appeared and testified in open court before the trial judge. The question is not whether we would have decided as he did (not implying that we would not have done so), but whether his decision has no foundation in the evidence. It is with that in view that the decree is here considered.

In support of the claim, above stated, appellant calls attention to a proposal made by Mr. J. P. Mudd, whose wife was an heir and beneficiary of the estate, and who was himself a stockholder of the corporation. He proposed, for Mrs. Mudd, either in person, or to cause the corporation, to advance for the benefit of the estate enough money to pay the tax, payable solely out of dividends on the one hundred and fifty-one shares of the corporation owned by the estate, as and when those dividends are declared and distributed without the pledge of any assets of the estate, on two conditions: (1) the removal of Edward Wilkinson, Jr., as a coexecutor and cotrustee, and the appointment by the court of a competent disinterested person in his place; and (2) a declaratory judgment to the effect that case No. 55708 was collusively filed, and that it be dismissed.

Mr. Mudd made it plain that he thought the sale of the stock in that corporation or some other stocks owned by the estate was an unwise financial course at the time on account of the prospects which confronted the value of those stocks. He also insisted that Edward Wilkinson, Jr., should be re-moved as coexecutor and cotrustee, on account of his improvident contacts with the corporation in his interest, and because he is unfit to serve in such capacity, in that for several years before his father died he began the practice of drawing money from the corporation in addition to his salary, in contemplation of additional earnings, and bonus, and frequently drew money in addition to his salary. (He claims that this was done with his father's consent.) That his personal interest and personal hostility toward Mr. and Mrs. Mudd prevented him giving deliberate business judgment to the administration of the estate: claiming that this litigation is a struggle for control, and that it is his purpose and intention to control the corporation; and that Mr. and Mrs. Mudd will not agree that Edward Wilkinson, Jr., have any voice in the management, operation or control of the corporation: they think his business ideas are not sound; that he owes a heavy mortgage debt on his home, and should not shape the corporation or participate in its management. (He is not now connected with the management of the corporation.) Other details are stated relating to the litigation now running its course; that there is mutual distrust, suspicion, and lack of confidence between Edward Wilkinson, Jr., Sterling Lanier, Jr., and his wife on one hand, and Mr. and Mrs. Mudd on the other; that they had no confidence in Edward Wilkinson, Jr.'s judgment, or his statements; that Mr. and Mrs. Lanier share the opinions of Edward Wilkinson, Jr.: their differences are wide and irreconcilable; that he will use his position to litigate with Mr. and Mrs. Mudd, both in respect to the corporation and the estate, and to promote his own interest: that he joined in the suit No. 55708 knowing that the charges against Mr. and Mrs. Mudd there made were untrue.

There was much evidence taken on the question of whether it would be advisable to declare a dividend at this time or to sell stock in the Western Grain Company, or to cause a loan to be effected on various propositions. The stocks in other companies and other assets held in the estate do not seem to be of sufficient value to pay the tax. The court could not require a dividend to be declared and paid. That was peculiarly a matter for the directors. The evidence indicates that a majority of the directors were voting with the plan, and on the advice of Mr. Mudd. The two

opposing interests each had three favorable directors with Mr. McCall, elected a director, and president of the company, finally agreeing with the Mudd interests. He is the coexecutor and cotrustee in place of Mrs. Lanier, who was so named in the will, but who resigned. He was appointed by the court. Edward Wilkinson, Jr., was named in the will of his father as a coexecutor and cotrustee·with Mrs. Lanier.

The contest seemed to be reduced to the question of whether stock in the corporation should be sold, or whether the proposal of Mr. Mudd to lend the money on the two conditions named should be approved.

In order to accept the proposal of Mr. Mudd, the two conditions went to the heart of the controversy between the two contending interests. The court must under the proposal make a declaratory judgment in case No. 55708 that it was collusively filed and be dismissed, whether with or without a trial of that issue was uncertain. The meaning of collusion in this connection gives occasion for the entry into a distinct field of judicial inquiry, if by the proposal such an inquiry is invited.

It has been applied in divorce cases to an agreement to suppress evidence, or to simulate a ground of divorce by apparently adversely interested parties, or to procure false testimony. Bacon v. Bacon, 233 Ala. 482, 172 So. 632, 109 A.L.R. 830. And it was thus expressed in 11 Corpus Juris 1220: "Collusion in judicial· proceedings is a secret agreement between two persons that the one should institute a suit against the other, in order to obtain the decision of a judicial tribunal for some sinister purpose, and appears to be of two kinds. (1) When the facts put forward as the foundation of the sentence of the court do not exist. (2) When they exist, but have been corruptly preconcerted for the express purpose of obtaining the sentence." See 1 Corpus Juris Secundum, Actions, § 19, page 1058.

It has been held to apply to a friendly suit where there is an absence of an honest and actual antagonistic assertion of rights, with no genuine adversary issue between the parties, as where one of the opposing parties dominated the conduct of the suit by payment of the fees of both. It "is collusive because it is not in any real sense adversary." United States v. Johnson, 319 U.S. 302, 63 S.Ct. 1075, 1076, 87 L.Ed. 1413.

But this principle does not seem to have been applied to a situation where the complainant and some of the proper parties respondent have no antagonistic interest, but where there is an actual controversy and antagonistic interest between complainant and other respondents, and the friendly respondents are made so because they occupy such a status as to make them proper parties even when their interest is such as that they control the complainant in the prosecution of the suit against those respondents whose interest is adverse to them both.

█ In such a collateral way, the trial court certainly was correct in declining to enter into that inquiry. The court could not accept such a proposal to the extent of trying the questions of law and fact involved in it. The parties did not agree to it, and could not be forced to do so.

█ Likewise, the question of the present fitness of Edward Wilkinson, Jr., as a coexecutor, and whether he should be removed as such, was one which should have a hearing in a direct proceeding begun for that purpose. Carr v. Illinois Cent. R. Co., 180 Ala. 159, 60 So. 277, 43 L.R.A., N.S., 634; Breeding v. Breeding, 128 Ala. 412, 30 So. 881; Section 181, Title 61, Code; 33 Corpus Juris Secundum, Executors and Administrators, § 91, note 81, page 1039. The court could not accept a proposal on such a condition. That is an issue not germane to the petition as filed, and improper for the court to accept as a condition to the proposal made by the Mudd interest. The fitness of an executor named in a will is controlled by statute. Section 69, Title 61, Code; Griffin v. Irwin, Ala. Sup., 21 So.2d 668 [1]; Kidd v. Bates, 120· Ala. 79, 23 So. 735, 41 L.R.A. 154, 74 Am.St. Rep. 17. His father, the testator, named him, probably knowing his status as to fitness as it then existed. His subsequent· relations with the other members of the family and mutual distrust and antipathy open a collateral field of inquiry not proper on such a hearing as the one now under· consideration, not to say that it is not pertinent in a direct proceeding in equity for· his removal. Section 178, Title 61, Code; Castleberry v. Hollingsworth, 215 Ala. 445, 111 So. 35; Section 65, Title 58, Code.

### Was the Decree Unfair to Appellants?

█ We are not impressed with the contention that the form of the decree direct–

---

[1] 246 Ala. 631.

ing the sale at auction as we have copied it is a fraud or unfair to the Mudd interests and should be reversed on that account.

It is contended that the court should have ordered a certain number of shares sold fixing a maximum amount to be secured by the sale. The Mudd interest needed thirty-two shares to give them a clear majority of the stock. The effect of their contention is that if the court had ordered the sale of say forty-seven shares at not less than a fixed price, say $1,100, pursuant to a finding by the court of that value, without specifying a maximum, it would have been in their power to bid in those shares regardless of any price which others might offer, and thereby enable them to secure as much as the thirty-two shares which they particularly wanted by paying such price as was necessary to get it, resulting in enhancing the corpus of the estate by raising more than enough to pay the amount of the estate tax. That the effect of the decree as entered was to enable the Lanier interest, by bidding for an indefinite number of shares so that the highest bidder per share would be the successful bidder, with a maximum amount to be raised, to bid such a sum per share as would secure the maximum amount fixed and as would make the number of shares sold be less than thirty-two. In that way, they might bid the maximum amount of $55,000 for thirty-one shares so as to prevent the Mudds from buying thirty-two shares, though they might be willing to bid more per share if they could buy thirty-two shares.

If the decree had been as counsel now insist, the Lanier interest would have just cause to complain that the effect of the decree was to enable the Mudds to secure a controlling interest, and to fix it so they could not prevent it from having that effect, except at a great financial loss. So that in either event, one or the other would have a complaint. The court did not take such contention into consideration, and it was not made before him. He correctly thought it necessary to raise a certain amount and no more. He correctly thought no more property should be sold than enough to raise that amount. He determined to supervise it by having it conducted in his presence at auction to the highest bidder. He did not purposely shape the decree so as to further the collateral interest of either contending party. The question

therefore is whether that decree was an improper exercise of his power. On its face, it is perfectly fair. If it is so framed as that collateral interests may be incidentally, but unintentionally, promoted or hindered, but it is fair to all parties, not considering such collateral interests, it should not be held to be improper, nor reversed as erroneous. It is expressive of the deliberate opinion of the court, whose opinion had sought by the executors, and without any claim that the court intended to prejudice the Mudd interests in its form.

The sale by the revenue collector was conducted in the same manner, resulting in a purchase by the Laniers of thirty-four shares at a price sufficient to raise the necessary funds. If that sale was fair, the order here in question was not unfair.

### Demurrer to the Petition.

Much complaint is made as to the judge in refusing to pass on the demurrer to the petition until he entered the final decree, when the demurrer was overruled, and the decree to that extent is also assigned as error. The court cannot be put in error so as to work a reversal of the decree on that account (30 Corpus Juris Secundum, Equity § 298, note 36, page 735), unless the demurrer which was overruled was well taken and should have been sustained. We cannot concur in the argument made to the effect that the demurrer should have been sustained.

Trustees or executors doubtful of the proper course to pursue may petition the court of equity, in which the trust or administration is being administered, for guidance and instructions even in respect to discretionary trust matters. Perry on Trusts, § 511, p. 860; Sanderson v. Gabriel, Ala.Sup., 21 So.2d 256, 262 (13);[1] Gilmer v. Gilmer, 245 Ala. 450 (4), 17 So.2d 529; Sellers v. Sellers, 35 Ala. 235; Carroll v. Richardson, 87 Ala. 605, 6 So. 342; 65 Corpus Juris 680, § 540; Northern Trust Co. v. Thompson, 336 Ill. 137, 168 N.E. 116; Section 159, Title 7, Code.

The court of equity, in which an estate is being administered, may in its judgment order a sale of property to pay debts and is not limited to statutory provisions applicable to the probate court. Section 138, Title 13, Code; Equity Rule 109; Code 1940, Tit. 7 Appendix; Anderson v.

[1] 246 Ala. 493.

Steiner, 217 Ala. 85, 115 So. 4; Howell v. Randle, 171 Ala. 451, 54 So. 563.

 We do not think such court is without the power to do so, by reason of the fact that the will so authorized the executors, especially when the executors are doubtful as to the proper exercise of that power.

 A court of probate cannot order a sale of property to pay debts when it may be done under the power in a will. Sections 228 and 243, Title 61, Code; Wilson v. Holt, 83 Ala. 528, 3 So. 321, 3 Am.St.Rep. 768.

 But the power of sale provided for in a will does not always abrogate the power of a court of equity in that respect as to an administration pending in it. Johnson v. Porterfield, 150 Ala. 532 (2), 43 So. 228.

Motion to Recuse Judge Howze.

 We cannot sustain the merits of this claim. It is based on alleged bias or prejudice by reason of the expression of an opinion before a full hearing, but without the allegation of any pecuniary or personal interest or relationship. The claim is not based on a statutory ground. Title 13, section 6, Code. Some authorities hold that bias without such interest or relationship is not a good ground to require a judge to recuse himself. See 30 Am.Jur. 783; 33 Corpus Juris 998; Fulton v. Longshore, 156 Ala. 611, 46 So. 989, 19 L.R.A.,N.S. 602; McConnell v. Goodwin, 189 Ala. 390, 66 So. 675, Ann.Cas.1917A, 839. But in that connection, see Ex parte Cornwell, 144 Ala. 497, 39 So. 354; Woodmen of World v. Alford, 206 Ala. 18, 89 So. 528. And when it is thought that a judge is disqualified and refuses to recuse himself, mandamus to require him to do so is the appropriate remedy (not now to say that the ruling may not be assigned as error on appeal). Lindsey v. Lindsey, 229 Ala. 578, 158 So. 522; McConnell v. Goodwin, supra; Woodmen of World v. Alford, supra. The question was not raised here by a petition for mandamus, and no assignment of error is made to that effect.

Construction of Will as to Power of Executors.

The assignments of error on this appeal do not separately present for consideration each separate aspect of the decree of January 20, 1944.

 The purpose of the petition by the executors was to have instructions of the court as to their duty in respect to the estate tax. In the third paragraph of the decree, the court held that the executors have the power to sell less than all the shares held by the estate in the company to pay the tax in question, presumably under item one of the will. The decree would be well supported without that holding since a court of equity administering the estate is not bound by the terms of a power conferred on the executors, and it is immaterial to the conclusion reached. So that on this appeal our affirmance is not a conclusion that the trial court correctly held that the executors have the power under the will to sell any of the shares of the corporation without an order from the court, if that is what the decree meant to declare. It is in the decree in the nature of a matter of inducement not necessary to the decision reached. It is therefore left open, without in the least intimating that we differ with the holding in that respect.

Is Mrs. Mudd in Contempt, Affecting This Appeal?

 In this connection, we need not consider the motion and claim of appellees that Mrs. Mudd should not be heard on this appeal on account of such claim of contempt. That would be the collateral determination of the existence and effect of a status which is current and undetermined in a proceeding in the trial court having that as its main purpose. To sustain a contention that a party should be prevented from taking any affirmative steps in presenting his claim, as by making motions going to the merits of the controversy (Jacoby v. Goetter, 74 Ala. 427; Crabtree v. Baker, 75 Ala. 91, 51 Am.Rep. 424), such steps must have been taken in a direct proceeding to have that party declared in contempt as to make out at least a prima facie case against him in that respect. Jacoby v. Goetter, supra; 13 Corpus Juris 91, note 19; (or perhaps an adjudication to that effect as held in Ex parte Eubank, 206 Ala. 8, 89 So. 656); 17 Corpus Juris Secundum, Contempt, § 97, notes 44 and 45, page 139. See, Dangel on Contempt, § 181, p, 86. In that connection, we take notice that there is on submission before us a companion case in which a demurrer was sustained to the petition which seeks to have Mrs. Mudd adjudged in contempt. That status does not show prima facie guilt in that respect so as to prevent her from having her assignments of error considered on this appeal.

## Has the Matter Become Moot?

We do not think the matter involved in the decree of January 20, 1944, has become moot so as to require a dismissal of the appeal on that account. Although the main controversy involved in that decree has been settled by the sale of thirty-four shares of the common stock of the corporation, made by the revenue collector, and the deficiency estate tax has been settled, and that to settle it was the purpose of that proceeding, that settlement did not occur until after a supersedeas appeal bond had been made and approved, and until after certain parties to the proceeding entered into the contract of January 21, 1944, as to which it is claimed that they are in contempt of court, and that the contract is void because it violated the prohibitory features of that decree.

As affecting that status, we should pass upon the question of whether the decree of January 20, 1944, was laid in error and should be reversed, Adams v. Biddle, 233 Ala. 96, 170 So. 343, 107 A.L.R. 657; Postal Tel.-Cable Co. v. City of Montgomery, 193 Ala. 234, 69 So. 428, Ann.Cas.1918B, 554, and therefore we have undertaken to do so. In respect to the matters which we have discussed, it is affirmed.

Affirmed.

All the Justices concur.

## On Rehearing and on Petition for Certiorari.

It is insisted on application for rehearing and in the petition for certiorari considered together, that the decree from which the appeal was taken is void because the children of Mr. and Mrs. Mudd, one adult and two minors, did not sign the agreement by which Judge Howze undertook to hear and determine this cause, and no one signed for them. All the other beneficiaries under the will of Edward Wilkinson, Sr., did sign by counsel.

There was no assignment of error presenting that contention on the submission of this cause, nor in the briefs for those parties filed at the time of the submission, and the matter was not considered by the Court. But the urgency of the argument now made requires its consideration and discussion.

We are persuaded that the insistence is not well taken.

Prior to the adoption of the Constitution of 1875, section 18, Article VI, which is section 160, Constitution of 1901, a court provided for by the Constitution was required to be presided over by a judge elected according to the Constitution, and the parties could not by agreement select such a judge though it were authorized by statute. Then it was that a person attempting to act as judge by agreement of parties could make no valid judgment in a court provided for by the Constitution, but it constituted a quasi arbitration. Ex parte Amos, 51 Ala. 57. But the Constitution of 1875 and that of 1901 made provision for the parties under certain circumstances by agreement to authorize a person who is practicing in that court and learned in the law to act as special judge in place of the presiding judge of that court. This provision of the Constitution has been adopted as a statute and is now section 124, Title 13, Code of 1940.

It does not require that the agreement or disability of the regular judge, or the qualification of the substitute judge, be shown by a writing or made to appear in the record. That legal status came on for consideration in Roberts v. State, 126 Ala. 74, 28 So. 741, 30 So. 554, in which it was held that if the record showed that a special judge was presiding, his acts were not void, though there was no evidence of an agreement shown by the record, since such a judge was authorized by the Constitution, and one so acting was at least a de facto judge, pro hac vice. The Court further held that to test the question of his authority, it must be done in the trial court, and if not there done it was waived, and the authority of the judge could not then be questioned on appeal.

This is a collateral attack, though there was a motion made and denied by Judge Howze to recuse himself, but the ruling on that motion has not been directly challenged, and is not assigned as error.

It is noted that the record does not affirmatively show that there was no agreement by or for the Mudd children that Judge Howze act as special judge. It does show that the agreement in the record was not so signed. But it does not show affirmatively that no verbal or implied agreement was made to that effect. An absence of all reference to such an agreement is not an affirmative showing that no such agreement was made.

The argument is also now made that Judge Howze was not qualified to act because the Constitution and statute require

that the substitute judge shall be one who is practicing in the court in which he is thus to act.

We think there are two reasons why this contention is not well taken though we take judicial notice of the fact that at that time Judge Howze was probate judge of Jefferson County, and as such prohibited from engaging in the practice of law.

One reason is that such a contention cannot be made on collateral attack, and there was no direct attack made on that ground, the agreement providing that he was "lawfully admitted to practice in this (that) court and learned in the law."

The other reason is that we do not think the Constitution and statute should be so strictly construed and applied as to disqualify one who has been duly licensed to practice law in that court, and which license is still in effect, though for the time being he cannot pursue the practice in that court because he holds some other official position. We take judicial notice of our records to the effect that Judge Howze has long been duly licensed to practice law in all the courts of Alabama, and that his license was then in full force and effect. It is apparent the parties so construed the law in drafting the agreement.

The petition for certiorari is denied; and the application for rehearing is overruled.

All the Justices concur.