SHORES, Justice.
Plaintiff (Pavelec) sued defendant (Pawnee) alleging a breach of a written agreement by the defendant. From a judgment in favor of the plaintiff entered by the trial judge, who heard the case non-jury, the defendant appealed.
The written instrument sued on purported to be a lease and referred to the plaintiff as “Lessor” and the defendant as “Lessee.” By the agreement, Pawnee agreed to pay Pavelec a royalty of $1.30 per ton for coal mined from the property and also provided:
LESSEE represents to the LESSOR that he intends to mine from 10,000 to 12,000 tons of coal each month from the LESSOR’S Premises and does hereby guarantee to the LESSOR that he will mine from the LESSOR’S Premises a minimum of 30,000 tons of coal during each six-month term of this Lease.[1]
It is undisputed that Pawnee never mined any coal from the lessor’s property and never paid any royalties to the lessor. It is also undisputed that there was coal on the property that was mined by someone else after the lessee refused to mine it.
On appeal, Pawnee argues that it is not liable to Pavelec under the agreement because it was a mere license to mine coal and not a lease. By this argument, Pawnee asserts that, inasmuch as it mined no coal, it owes Pavelec nothing. This construction of the agreement would leave the paragraph set out above and many other provisions of the instrument without any efficacy whatever. Although it is sometimes difficult to distinguish between licenses and leases in cases such as this, the general rules applicable to construction of written contracts apply and compel a construction which will effect the intention of the parties, and one aid in this regard is supplied by what they called it. Holt v. City of Montgomery, 212 Ala. 235, 102 So. 49 (1924). See generally 54 Am.Jur.2d, Mines and Minerals § 120. Mineral rights and interests may be transferred by contracts of sale, deeds, leases or licenses, but the intention of the parties is to be sought, and each instrument is to be considered in light of its own provisions. Adams v. Riddle, 233 Ala. 96, 170 So. 343 (1936).
*836 Applying these rules to the instrument before us, we are compelled to the conclusion that the parties intended to provide that Pawnee would guarantee a minimum payment of $1.30 per ton for coal recovered from Pavelec’s property and would guarantee that it would mine 30,000 tons during each six-month term of the lease. Pawnee breached its agreement in this regard, and the trial court correctly held that Pavelec was thus entitled to damages in that amount: “The compensation to which a lessor of a mining lease is entitled, whether it is termed rent or a royalty, is primarily that stipulated for in the lease.” 54 Am.Jur.2d, Mines and Minerals § 136.
Having agreed to pay a certain amount, Pawnee is liable to Pavelec whether or not the instrument is a lease. Am.Jur., supra, § 143.
The judgment appealed from is affirmed.
AFFIRMED.
MADDOX, JONES, ALMON and BEAT-TY, JJ., concur.
APPENDIX
STATE OF ALABAMA )
) LEASE
COUNTY OF WINSTON )
THIS LEASE made and entered into this 25 day of July, 1974, by and between DOROTHY GREENE PAVELEC, hereinafter referred to as LESSOR, and PAWNEE CONSTRUCTION COMPANY, INC., an Alabama Corporation, Birmingham, Alabama, hereinafter referred to as LESSEE:
WITNESSETH:
LESSOR, in consideration of the payment to her of the sums of money hereinafter stipulated, and for the further consideration of the covenants of LESSEE as hereinafter expressed to be kept and performed, hereby grant to LESSEE the right, to the extent of the interests of LESSOR, to mine by the strip-mining method only, the coal from all seams from the following described mineral rights located in Winston County, Alabama, to-wit:
WVs of WV2 of FJ/2 and EVi of EVfe of WV2 of Section 21, Township 10 South, Range 10 West, Winston County, Alabama,
which lands are hereinafter sometimes referred to as the Premises, the mining of the land located North of the paved road which divides the property and runs generally East and West to be completed before mining operations are commenced 6n the land located South of said Road. LESSEE may open an operation on the land North of the said Road to have two operations on each side of the Road provided both operations strip simultaneously to remove the overburden to a depth of at least fifty (50) feet provided the coal underneath is of equal consistency.
The rights herein granted are expressly made subject to the following terms, conditions, covenants and limitations:
1. EXTENT OF RIGHTS GRANTED. LESSOR grants to LESSEE, in addition to the foregoing mining rights, such rights to use, damage or excavate the surface of the Premises as may be reasonably necessary or proper in mining coal by the strip-mining method without being held liable for such damage, including the use of water and office space on said lands, but for no other purpose whatsoever, and subject in any event to all of the following terms and conditions of this Lease.
2. ROYALTY. LESSEE shall, as rental for the rights herein granted, pay to the LESSOR or assigns not later than the 20 day of each month for all coal mined from the Premises during the preceding month a royalty equal to the following:
(a) $1.30 per ton of 2,000 pounds avoirdupois of all coal removed from the Premises during said preceding calendar month.
LESSEE represents to the LESSOR that he intends to mine from 10,000 to 12,000 tons of coal each month from the LESSOR’S Premises and does hereby guarantee to the LESSOR that he will mine from the LESSOR’S Premises a minimum of 30,000 tons of coal during each six-month term of this Lease.
*837 If the mining of coal under this agreement is prevented for any full calendar month during the primary or extended term of this Lease by any strike or work stoppage of miners or work stoppage due to shortage of vital materials unobtainable by LESSEE after reasonable diligent efforts by LESSEE, which is general in the district in which the Premises are located, then the guarantee set out above shall be reduced in direct ratio to the time of said work stoppage.
If either State or Federal Law is enacted which materially affects this agreement, either party, upon written notice to the other party, may, thirty (30) days thereafter, terminate this agreement.
Remittance of royalties provided for herein shall be accompanied by certificates signed by the LESSEE showing the total amount of coal mined during the preceding month for which the royalty is being paid.
3. RECORDS. LESSEE will keep proper books of account of the weights and sale prices of all coal mined from the Premises and, for the purpose of information and checking the certificates of weights and prices furnished by LESSEE, LESSOR, by its officers, agents or employees, at all reasonable times, shall have access to said books of account and other records insofar as it is necessary to ascertain such weights and prices, but said books and records shall not be conclusive of LESSOR’S rights. Promptly after the end of each six-month period of this Lease, LESSEE shall deliver to LESSOR at LESSEE’S expense, a map or blueprint furnished to the State of Alabama acceptable to LESSOR, which map shall show the progress of the mine workings at the end of such six-month period.
4.MANNER OF OPERATION. LESSEE agrees to mine from the Premises all of the coal contained therein which can be economically recovered by generally accepted methods of strip-mining and shall, in general, mine in the same manner as would a prudent owner conducting his own operation. It is further understood and agreed that LESSEE shall be required to remove the overburden to a depth of at least fifty (50) feet, provided the coal underneath is of equal consistency.
5. NONLIABILITY OF LESSOR AND INDEMNITY BY LESSEE. LESSOR shall not be held liable for any claims on account of or arising from or in any way connected with any act or acts of LESSEE on or in connection with the Premises or the exercise by LESSEE of any of the rights herein granted, and LESSEE agrees to and does hereby indemnify, protect and hold harmless to LESSOR against all claims, suits, demands, judgments, decrees, loss, cost or expense, including attorneys’ fees and court costs, which may arise in connection with or on account of any such claim.
6. COMPLIANCE WITH LAWS OF GOVERNING BODIES. LESSEE agrees in his operations on the Premises, to adhere to and comply with all rules, regulations and laws of the county, state and Federal governments or any agencies of such governments having jurisdiction, and hereby expressly agrees to indemnify and hold harmless the LESSOR from any liability whatsoever brought about by failure to comply with said rules, regulations and laws.
7. TERM. The initial or primary term of this lease is seven-months from its date of execution. LESSEE shall have the right to extend or renew this lease for five (5) additional terms of six months by notice in writing to the effect given to LESSOR or assigns not less than thirty (30) days prior to the expiration of the initial or primary term.
8. NOTICE. . Notice hereunder from the LESSEE to LESSOR shall be deemed to have been given when deposited in the certified U. S. Mail addressed to DOROTHY GREENE PAVELEC, 3241 Southview, Montgomery, Ala., or such other address as LESSOR may from time to time furnish to LESSEE. The notice from LESSOR to LESSEE shall be deemed to have been given when deposited in the certified U. S. Mail addressed to PAWNEE CONSTRUCTION COMPANY, INC., P. 0. Box 6257, Birmingham, Alabama, 35217, or such other address as LESSEE may from time to time furnish to LESSOR.
*838 All payments due hereunder from LESSEE to LESSOR shall be made payable to DOROTHY GREENE PAYELEC (which may be changed from time to time by written request of the LESSOR).
9. ASSIGNMENT. LESSEE shall not have the right to assign, sublet or sublease this lease or any part thereof without the prior written consent of LESSOR.
10. INSPECTION. LESSOR or assigns shall have the right to enter upon said leased Premises for the purposes of inspecting the operations of the LESSEE, taking measurements, taking pictures, or doing whatever else is necessary or desirable in determining the extent of the operations and the amount of coal actually mined.
11. PULPWOOD AND TIMBER REMOVAL. LESSEE hereby grants to LESSOR the right to remove any and all pulpwood and timber from the Premises prior to strip-mining operation of LESSEE. This right shall not interfere or delay the strip-mining operation of said LESSEE.
12. RECLAMATION. LESSEE hereby agrees in compliance with the Laws of the State of Alabama to shape up and reseed the acreage disturbed by the mining operations of LESSEE as soon as the oxidation of the soil and appropriate planting conditions will permit after the said mining operations have been completed.
13. DEFAULT. In the event of any default by the LESSEE under this Lease, whether for the payment of royalties of for some other failure to comply with the terms of this agreement and if said default shall, continue for thirty (30) days after notice of said default, then the LESSOR shall have the right to immediately cancel this Lease and re-enter and take possession of the Premises and the LESSEE shall respond in damages whether for payment of any money due or for any other damages due to breach of said Lease or agreement, including attorneys’ fees and court costs.
14. ADJACENT PROPERTY. LESSEE hereby agrees to begin strip-mining operations on the herein described property on a new and different day in order to determine the tonnage on the herein described property correctly, or in lieu thereof one day’s notice will be given to Hugh D. Farris, Jasper, Alabama.
EXECUTED in duplicate this the 27th day of July, 1974.
/s/ Dorothy Green Pavelec,
Lessor
PAWNEE CONSTRUCTION COMPANY, INC.
AN ALABAMA CORPORATION
BY: Lamar Hawkins
Its President, Lessee
ATTEST:
/s/ Jean Collins
Secretary
STATE OF ALABAMA
COUNTY OF JEFFERSON
Before me, the undersigned authority, a Notary Public, in and for said County, in said State, personally appeared Dorothy Greene Pavelec, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, she executed the same voluntarily on the day the same bears date.
Given under my hand and official seal, this 25th day of July, 1974.
/s/ Harry Cole
Notary Public
My Commission Expires:
3-30-76
STATE OF ALABAMA
COUNTY OF JEFFERSON
Before me, the undersigned authority, a Notary Public, in and for said County, in said State, hereby certify that Lamar Hawkins, whose name as President of Pawnee Construction Company, Inc., a corporation is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.
*839 Given under my hand and official seal, this 27th day of July, 1974.
/s/ Hugh D. Farris
Notary Public
My Commission Expires:
12/5/1976

. The agreement in its entirety is attached as an appendix to this opinion.