MYERS, P.J.,
 

 for the Court.
 

 ¶ 1. Kenyoung Fair was convicted of murder in the Choctaw County Circuit Court. He was sentenced to serve a term of life in the custody of the Mississippi
 
 *382
 
 Department of Corrections (MDOC). Aggrieved by his conviction and sentence, Fail' appeals citing three issues: (1) whether his murder conviction was supported by the evidence; (2) whether the trial court erred in refusing to grant a jury instruction; and (3) whether the trial court erred in preemptively denying a heat-of-passion manslaughter jury instruction. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On July 28, 2007, Fair, Samuel Dotson, and Darnell Moore went to Ackerman, Mississippi. All three were from Weir, Mississippi. Fair and Moore had been involved in a fight in Ackerman several weeks prior to that day. On July 28, 2007, word got back to several teenagers in Ack-erman that some boys from Weir were coming to Ackerman to fight them. Several teenagers from Ackerman joined together and began walking around Ackerman. They stopped in front of the Friendship M.B. Church, as they routinely did. Several other groups of teenagers from Acker-man joined them there.
 

 ¶ 3. Shortly thereafter, Fair, Dotson, and Moore pulled up to the crowd in a car. Several of the Ackerman teenagers testified that a verbal exchange occurred between the occupants of the car from Weir and some of the Ackerman teenagers. One of the Ackerman teenagers testified that the exchange was initiated by one of the occupants of the car saying, “We heard y’all was [sic] looking for us.” One of the Ackerman teenagers responded, “no, I heard y’all was [sic] looking for us.” The Weir teenagers responded, “Well, what’s up?” The Ackerman crew responded for them to “get out of the car.” Suddenly, Fair, sitting in the passenger seat, grabbed a shotgun that was lying on the front seat of the car. One of the Acker-man teenagers saw this and yelled, “dude got a burner.” The Ackerman teenagers testified that all of them either started to back away from the car or turned and started to run in the other direction. Fair fired three or four shots out of the driver’s side window. One of these shots struck Gerrodd Edwards in the back. Edwards was initially taken to the hospital in Acker-man and later transported to a hospital in Memphis, Tennessee where he died on August 6, 2007.
 

 ¶ 4. Fair was arrested and charged with the murder of Edwards. A jury convicted Fair of murder after a two-day jury trial. He was sentenced to life imprisonment in the custody of the MDOC. Fair filed a post-trial motion for a new trial, which was denied by the trial court. Aggrieved, Fair appeals his conviction and sentence.
 

 DISCUSSION
 

 I. WHETHER THE VERDICT IS SUPPORTED BY THE EVIDENCE.
 

 ¶ 5. When presented with a claim that the evidence is insufficient to sustain a conviction, we review the record in “a light most favorable to the State.”
 
 Robinson v. State,
 
 940 So.2d 235, 239-40(¶ 13) (Miss.2006) (citing
 
 McClain v. State,
 
 625 So.2d 774, 778 (Miss.1993)). This Court “must accept as true all evidence consistent with [the defendant’s] guilt, together with all favorable inferences that may be reasonably drawn from the evidence, and disregard the evidence favorable to the defendant.”
 
 Id.
 
 at 240(¶ 13). If the evidence is “of such quality and weight that, ‘having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded [persons] in the exercise of impartial judgment might reach different conclusions on every element of the offense,’ the evidence will be deemed to have been sufficient.”
 
 Bush v. State,
 
 895
 
 *383
 
 So.2d 836, 843(¶ 16) (Miss.2005) (quoting
 
 Edwards v. State,
 
 469 So.2d 68, 70 (Miss.1985)).
 

 ¶ 6. Fair argues that he should have been convicted of manslaughter under an “imperfect self-defense” theory. Fair contends that he was in fear of death or great bodily harm because of the past altercation between the two groups, the number of teenagers with the Ackerman group, and some alleged gestures the Ackerman teenagers made during the verbal exchange. Fair, sitting in the passenger seat, claims that he fired the shotgun three or four times out of the driver’s window “to get them to get back.”
 

 ¶ 7. As the State correctly points out, Fair did not raise this defense in the trial court. Fair’s defense was ordinary self-defense, not imperfect self-defense. All testimony, the jury instructions, and the opening and closing statements are void of any mention of imperfect self-defense. Additionally, Fair did not include imperfect self-defense as a basis in his motion for a new trial. “It is well established that ‘questions will not be decided upon appeal which were not presented to the trial court and that court given an opportunity to rule on them.’ ”
 
 Neese v. State,
 
 993 So.2d 837, 843(¶ 12) (Miss.Ct.App.2008) (citations omitted). Accordingly, this issue is procedurally barred from our consideration.
 

 ¶ 8. Procedural bar notwithstanding, we find the sufficiency of the evidence does not warrant a manslaughter conviction under an imperfect self-defense theory. The supreme court has described imperfect self-defense as a killing “done without malice but under a bona fide (but unfounded) belief that it was necessary to prevent death or great bodily harm.”
 
 Wade v. State,
 
 748 So.2d 771, 775(¶ 12) (Miss.1999). If this bona fide belief is found, the intentional killing may be considered manslaughter.
 
 Id.
 

 ¶ 9. In facts similar to the present case, the supreme court in
 
 Smiley v. State,
 
 815 So.2d 1140, 1146 (¶¶ 22-23) (Miss.2002) considered whether the defendant should be found guilty of manslaughter instead of murder under the imperfect self-defense theory. The supreme court found the facts did not warrant a reduction to manslaughter: the victim was shot in the back as he walked away from Smiley; witnesses heard Smiley say, “I got that bitch” and “I done told that mother f about fooling with me,” just after the victim was shot; and although Smiley and the victim had disagreed on a prior occasion, there was no testimony presented regarding violence or threats of violence between the two men before the shooting occurred.
 
 Id.
 
 at (¶ 23). Upon viewing the evidence which supported the jury’s verdict, the supreme court found in
 
 Smiley
 
 to be without merit.
 
 Id.
 

 ¶ 10. In the case at bar, the pathologist testified that Edwards was shot in his back, right arm, and buttock. He noted thirty-six pellet holes in these areas. The witnesses testified that when it was discovered that Fair had pulled a gun, everyone one in the Ackerman group either started backing away or turned and ran. The findings of the pathologist and the testimony of the witnesses confirm that Edwards had turned away from the car and was likely running in the other direction when he was shot. One of the persons who was in the car with Fair testified that Fair said, “I am tired of this,” right before he started shooting. He then told Dotson, the driver of the car, to pull his seat back; he then fired three to four shots out of the window. Additionally, Moore, who was in the car with Fair, testified that none of the Ackerman teenager made an aggressive move toward the car and that there were
 
 *384
 
 only words being exchanged. This was corroborated by several of the Ackerman teenagers. At most, there was a heated verbal exchange that does not support a manslaughter conviction under the imperfect self-defense theory.
 
 See Phillips v. State,
 
 794 So.2d 1034, 1038-39(¶ 19) (Miss.2001). Finally, there was no evidence presented that any of the Ackerman teenagers were armed during this episode.
 

 ¶ 11. Viewing the evidence in the light most favorable to the State, we find more than sufficient evidence to support a murder conviction. Fair’s argument that he was under a genuine (but unfounded) belief that his actions were necessary to prevent death or great bodily harm, necessitating a manslaughter conviction under an imperfect self-defense theory, is negated by the facts of the case and the witnesses’ testimonies. Accordingly, this issue is without merit.
 

 II. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GRANT FAIR’S JURY INSTRUCTION.
 

 ¶ 12. In reviewing the grant or denial of jury instructions, this Court considers the instructions as a whole and with no one instruction taken out of context.
 
 Strickland v. State,
 
 980 So.2d 908, 922(¶ 24) (Miss.2008) (quoting
 
 Chandler v. State,
 
 946 So.2d 355, 360(¶ 21) (Miss.2006)). While “[a] defendant is entitled to have jury instructions given which present his theory of the case, ... the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.”
 
 Id.
 

 ¶ 13. Fair argues the trial court erred in refusing to grant his requested instruction D-5, which stated:
 

 The court instructs the jury that while malice aforethought is a necessary element of the crime of murder, it does not follow therefrom that the existence of actual malice at the time of the slaying would necessarily have the effect of rending a particular homicide case a murder. A person may be guilty only of [sic] manslaughter or justifiable homicide when slaying another even though the accused is mad [or] bearing ill will toward his adversary at the time of the killing, if the act is done while resisting an attempt of the latter to do any unlawful act, or after such attempt shall have failed, if such anger or ill will engendered by the particular circumstances of the unlawful act then being attempted, or the commission of which is thwarted, and is non-existent prior thereto. To constitute murder, the malice must precede the unlawful act which is being attempted or committed by the person killed, where the killing is done in resisting his attempt to do an unlawful act.
 

 The trial court refused to grant this instruction because it was covered in other instructions and, thus, cumulative. Fair argues that by refusing this instruction, the jury was not properly informed about the difference between deliberate-design murder and culpable-negligence manslaughter.
 

 ¶ 14. Our review of the jury instructions as a whole leads us to conclude that the jury was sufficiently informed about the differences between deliberate-design murder and culpable-negligence manslaughter. The trial court granted jury instruction S-2, which reads as follows:
 

 The Court instructs the jury that deliberate design as mentioned in these instructions does not have to exist in the mind of the slayer for any given length of time; and if only moments before the act of violence, if any, the defendant, Kenyoung Fair, acted with deliberate design to take the life of Gerrodd Edwards, then it was truly malice and the
 
 *385
 
 act was truly murder as if the deliberate design had existed in the mind of the defendant for minutes, hours, days, weeks, or even years.
 

 The court also granted instruction S-l, a murder instruction, which states in part:
 

 The Court instructs the jury that murder is the killing of a human being, not in necessary self-defense, and without authority of law, by any means or any manner, when done with the deliberate design to effect the death of the person killed OR when done in the commission of an act eminently dangerous to other[s] and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual....
 

 The court went on to grant two culpable-negligence instructions, D-6 and D-7.
 
 [1]
 
 These instructions were given in addition to a self-defense instruction. Upon reading the instructions as a whole, we find that the jury was adequately informed with regard to deliberate-design murder and culpable-negligence manslaughter. Therefore, this issue is without merit.
 

 III. WHETHER THE TRIAL COURT ERRED IN PREEMPTIVELY DENYING FAIR A HEAT-OF-PASSION MANSLAUGHTER INSTRUCTION.
 

 ¶ 15. In
 
 Mullins v. State,
 
 493 So.2d 971, 974 (Miss.1986), the supreme court stated that:
 

 [Heat of passion] is a state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.
 

 “When a deadly weapon is used, ... malice is implied.”
 
 Turner v. State,
 
 773 So.2d 952, 954(¶ 7) (Miss.Ct.App.2000). “[I]n order to overcome that [malice implication], there must be some evidence in the record from which the jury could determine that
 
 *386
 
 [the act] was not [the] result of malice, but a result of the heat of passion.”
 
 Wilson v. State,
 
 574 So.2d 1324, 1336 (Miss.1990).
 

 ¶ 16. Fair does not provide any specific facts to support his assertion. He simply states that the facts and evidence entitled him to a heat-of-passion manslaughter instruction. The record indicates that, at most, Fair and the Ackerman teenagers were engaged in a verbal argument. However, the law is well settled that words alone are not enough to require a heat-of-passion manslaughter instruction.
 
 Myers v. State,
 
 832 So.2d 540, 542(¶ 10) (Miss.Ct.App.2002).
 

 ¶ 17. Furthermore, the record is silent on any evidence that Fair was in a state of violent or uncontrollable rage at the time of the shooting. It shows the antithesis, a deliberate shooting. Fair and his friends armed themselves with two weapons, drove directly to the area where the previous fight had occurred, found the people with whom they had previously fought, and fired three to four shots into the crowd-one of which was a fatal shot to the back of Edwards. We find that these actions were calculated and show a deliberate-design murder.
 

 ¶ 18. We find that the evidence does not support a jury instruction for heat-of-passion manslaughter. Therefore, the trial court did not err by refusing to grant the instruction; thus, this issue is without merit.
 

 . ¶ 19. THE JUDGMENT OF THE CHOCTAW COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . D-6 states:
 

 The Court instructs the jury the killing of [a] human being by the culpable negligence of another, without authority of law, is manslaughter, and the Court further instructs the jury that culpable negligence is defined as negligence of a degree so gross as to be tantamount to a wanton disregard or, or utter indifference to, the safety of human life.
 

 If you believe from the evidence beyond a reasonable doubt that the death of Gerrod Edwards was caused by the culpable negligence of Kenyoung Fair, then you shall find Kenyoung Fair guilty of the crime of manslaughter.
 

 D-7 states:
 

 If you find the evidence in this case that the defendant, Kenyoung Fair, is not guilty of murder, then you should continue with your deliberation to consider the elements of the lesser crime of culpable[-]negligence manslaughter.
 

 The Court instructs tire jury the killing of [a] human being by the culpable negligence of another, without authority of law, is manslaughter, and the Court further instructs the jury that culpable negligence is defined as negligence of a degree so gross as to be tantamount to a wanton disregard or, or [sic] utter indifference to, the safety of human life.
 

 If you find from the evidence in this case, beyond a reasonable doubt, that Kenyoung Fair, on July 28, 2007, in Choctaw County, Mississippi, that Gerrod Edwards was a human being, and that, Kenyoung Fair, without authority of law did kill Gerrod Edwards, with culpable negligence, by discharge of a fireman, and not in necessary self-defense, then you shall find Kenyoung Fair guilty of manslaughter.
 

 If the prosecution has failed to prove any one or more of the above-listed elements beyond a reasonable doubt, then you shall find Kenyoung Fair not guilty of manslaughter.